No. 8818.

GROVER v. PADDOCK.

SURVEY.— *Real Estate.—Fractional Quarter-Sections.—Interior and Exterior Halves.—Boundaries.—Act of Congress.*—Where a fractional quarter-section contains an excess or surplus over one hundred and sixty acres, the legal

division of the quarter-section into halves, under the act of Congress of April 24th, 1820, and the regulations prescribed by the secretary of the treasury pursuant thereto, required that the interior half should contain eighty acres, and that all the excess or surplus should be thrown on or into the exterior half of the quarter-section.

SAME.—*County Surveyor.*—*Corners and Dividing Lines.*—A survey made by the county surveyor, in conformity with the provisions of sections 5948 to 5959, R. S. 1881, unless appealed from as therein provided, is conclusive evidence of the corners and lines established by such survey.

From the Laporte Circuit Court.

*M. K. Farrand* and *E. G. Thomas*, for appellant.

*L. A. Cole* and *C. H. Truesdell*, for appellee.

HOWK, J.—In this case the appellant sued the appellee to recover the possession of certain described real estate in Laporte county, and damages for the detention thereof. The appellee having answered by a general denial of the complaint, the issues joined were tried by the court, and a finding was made for the appellee, the defendant below, and judgment was rendered accordingly.

The only error assigned by the appellant is the decision of the court in overruling his motion for a new trial, and the only causes assigned for such new trial were, that the finding of the court was contrary to law and was not sustained by sufficient evidence.

The question for our decision, therefore, is simply this: Is there any legal evidence in the record wlfich tends to sustain the finding of the trial court on every material point? The real estate in controversy is described in the appellant's complaint as follows: " Commencing at the southwest corner of the northeast quarter of the northwest quarter of section 18, in township 38 north, of range one west, and running thence south three chains and seventy-eight and five-tenths links; thence east one chain and fifty-nine and five-tenths links; thence north three chains and seventy-eight and five-tenths links; and thence west to the point of commencing."

The evidence in the record shows that the northwest quarter of said section 18 is a fractional quarter-section, containing

one hundred and seventy-nine and sixty-two hundredths acres, or nineteen and sixty-two hundredths acres in excess of the usual number of acres in a quarter-section. The theory of the appellant's case is, that, in the division of this quarter-section into east and west halves, the law required that it should be divided into equal halves, so that the one-half of the excess or surplus should be included in the east half, and the residue in the west half of the quarter-section. If this theory was correct, then the real estate in controversy would have fallen within the boundaries of the appellant's land, as the western line of his land was the dividing line between the east and west halves of the quarter-section. But the appellant's theory is clearly wrong. *Keesling* v. *Truitt*, 30 Ind. 306. Under the act of Congress of April 24th, 1820, and the regulations prescribed by the secretary of the treasury, pursuant thereto, which are set out in the opinion of the court in the case cited, the legal division of the quarter-section into east and west halves, required that the interior or east half should contain eighty acres, and that all the excess or surplus should be thrown on the exterior or west half of the quarter-section. Under this division of the quarter-section, the appellant had no title, under the evidence, to the real estate described in his complaint.

In another view of the case, it seems to us that the finding and judgment of the trial court were clearly right, and can not be disturbed. The evidence shows that, on the 2d day of August, 1875, one James Ray, then the owner of the land in said quarter-section, afterwards conveyed to the appellant, and under whom the appellant claimed title to the real estate in controversy in this action, procured a survey to be made of said quarter-section by the proper county surveyor, for the purpose of establishing the dividing line between the east and west halves of said quarter-section, under and pursuant to the provisions of the act of June 17th, 1852, providing for the election, and prescribing certain duties, of county surveyors. 1 R. S. 1876, p. 864; sections 5948 to 5959, R. S. 1881. It

was further shown by the evidence that the county surveyor made such survey and established such dividing line, under and pursuant to the aforesaid act of Congress and the regulations prescribed by the secretary of the treasury; and that, by the line thus established, the real estate in controversy in this action was not embraced in the boundaries of the land now owned by the appellant, and was shown to be located in the west half of said quarter-section. The evidence also showed that Ray was personally present and took part in making such survey; but it failed to show that he objected to any of the proceedings of the surveyor, or that he appealed therefrom to the proper court.

It is claimed, therefore, by appellee's counsel, and correctly so we think, that the survey thus made is conclusive upon the rights of Ray, and of the appellant claiming under him, and that the appellant is thereby estopped from claiming any land lying west of the line established by such survey, whether that survey was correctly or incorrectly made. In *Herbst* v. *Smith*, 71 Ind. 44, upon the point now under consideration, this court said: " The object of the statute was, as we think, to make such survey *prima facie* evidence, etc., during the time in which an appeal could be taken, and perhaps pending an appeal when taken; but, where no appeal is taken, the survey becomes, after the time limited therefor, conclusive. Otherwise, such survey settles nothing that may not, upon a new survey and without any appeal, be unsettled. A new survey may doubtless be had, not for the purpose of establishing the corners, lines or boundaries, as an original survey; but for the purpose of relocating or perpetuating the corners, lines or boundaries established by such original survey, where they have become obscured or lost." *Mull* v. *Orme*, 67 Ind. 95.

We are of the opinion that the finding of the court, in the case at bar, was in strict accordance with law and sustained by sufficient evidence, and that the court committed no error in overruling the appellant's motion for a new trial.

The judgment is affirmed, with costs.