## HOWARD ET AL. *v.* TWIBELL.

### [No. 22,112. Filed January 10, 1913.]

1. APPEAL.—*Parties.—Necessary Parties.*—Where one of several defendants in an action to quiet title applied for and was granted a new trial as of right on the issue presented by a cross-complaint in which the plaintiff alone was made a defendant, and the interest of the cross-complainant was as to real estate separate and distinct from that in which the other defendants claimed an interest, such other defendants were not affected by, and they had no interest in, the judgment rendered in such new trial, and are therefore not necessary parties on appeal from the judgment rendered in such subsequent trial. p. 69.

2. APPEAL.—*Vacation Appeal.—Parties.—Notice.*—Only parties to the judgment are required to be joined as appellants in vacation appeals and served with notice. p. 69.

3. QUIETING TITLE.—*Deraignment of Title.—Common Source.*—In an action to quiet title, where plaintiff and defendant claim through a common grantor in possession, the fact that plaintiff did not deraign title from the government cannot affect his right to recover on a complaint in which he asserts a fee simple title. p. 69.

4. QUIETING TITLE.—*Complaint.—Proof of Adverse Possession.—Sufficiency.*—Where, in an action to quiet title, plaintiff's complaint alleged a fee simple title, proof of possession of a great bulk of the property in plaintiff and his grantors for more than fifty years, under a deed describing the property described in the complaint, is sufficient to show constructive possession of the whole, and is sufficient to base a title in fee upon, in the absence of a showing of adverse possession in another for twenty years. p. 69.

5. NAME.—*Idem Sonans.—"Blount".—"Blunt".*—The name John Blunt in a deed conveying property entered by John Blount is sufficient to support a claim of title, the names being *idem sonans.* p. 71.

6. ADVERSE POSSESSION.—*Admission Against Interest.—Disclaimer.*—Where possession has not already ripened into a title by adverse possession, an admission by the one in possession that he does not own title to the land in controversy beyond the line shown by the survey, and such line is the same as the one claimed in the complaint to be the boundary of the land in dispute, is sufficient to toll the running of the statute of limitations. p. 75.

7. ADVERSE POSSESSION.—*Admissions Against Interest.—Effect on Grantee.*—An admission by one while in possession that he did

not own beyond the line of a survey, which was claimed to be the true boundary of the land in dispute in an action against his grantee to quiet title, is binding on such grantee in the absence of fraud or collusion. p. 75.

8. APPEAL.—*Review.*—*Evidence.*—*Weight and Sufficiency.*—Where there is some evidence to support the judgment of the trial court, it will not be disturbed on appeal on the weight of the evidence. p. 76.

From Blackford Circuit Court; *Charles E. Sturgis,* Judge.

Action by Joseph H. Twibell against Maud M. Howard and others. From a judgment for plaintiff, the defendants appeal. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*W. H. Eichhorn, Edwin C. Vaughn* and *J. P. Boyd,* for appellants.

*L. B. Simmons,* for appellee.

MYERS, J.—Action by appellee against appellants and others to quiet title to real estate. The complaint is in one paragraph, and the answer of all defendants who answered, in general denial, some of them defaulting. Appellant Maud Howard and one Burk filed cross-complaints seeking to quiet title by adverse possession to separate portions of the real estate described in the complaint. There was a trial by the court, finding, and judgment in 1906 in favor of appellee on the complaint and cross-complaint, quieting title in him against all the parties. Appellant Maud Howard filed a motion for, and obtained a new trial as of right. Appellee was the only party defendant to her cross-complaint, and the original judgment against the other original defendants stands so far as the record discloses, and the trial was had on the issues between appellants and appellee, which resulted in a judgment in 1908 against appellants only, and from that judgment the appeal is presented.

A motion is made to dismiss the appeal for failure of appellants to join any of the other original parties. The interest of appellants was a distinct and separate issue as to

separate real estate, from all other persons, being a contest as to title between appellants and appellee only as to that property, and a reversal of the judgment of 1908 could have no effect on the judgment of 1906, or affect any of the other parties to it in any way, nor have any of them any interest in either an affirmance or a reversal of the judgment of 1908, hence none of them have any interest in that judgment or in this appeal, and they were not necessary parties. They are not even parties to the record, much less parties to the judgment, and

2.  the rule is, that it is parties to the judgment who must be joined as appellants in vacation appeals, as this is, and notice given to them. *Kaufman* v. *Preston* (1902), 158 Ind. 361, 63 N. E. 570; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 233; *Haymaker* v. *Schneck* (1903), 160 Ind. 443, 67 N. E. 181. The motion to dismiss the appeal is denied.

Appellants claim under their motion for a new trial that appellee, having asserted a fee simple title in his complaint, has failed by the evidence to show such title, but

3.  shows, if anything, only an equitable title. The claim is made because he does not deraign his title from the government, but shows an entry by John Blount, and no deed to Blount in the chain of title. As to this matter it is sufficient to say that both parties claim through a common source of title, a common grantor in possession, and this is sufficient. *Wilson* v. *Peelle* (1881), 78 Ind. 384, 388; *Mc Whorter* v. *Heltzell* (1890), 124 Ind. 129, 131, 24 N. E. 743.

And while appellee was bound to show title in him-

4.  self, and cannot avail himself of the weakness of the title of his adversary, he does show possession in himself and his grantors of the great bulk of the property, under a deed describing the property in his complaint, for more than fifty years, which would be sufficient as constructive possession of the whole, and sufficient to base a title in fee upon, if adverse possession were not shown in another

for the required twenty years. *Sinclair* v. *Gunzenhauser* (1913), *post* 78, 98 N. E. 37, 100 N. E. 376, and cases cited.

Appellants deraign title from John Blount or Blunt, through a deed dated November 5, 1855, for ten acres by metes and bounds, in the certificate of the acknowledgment of which he is called John Blunt. Appellee deraigns title from John Blunt and Barbara Blunt his wife, in the certificate of acknowledgement to which he is called Bloynt, and she Blount, dated December 25, 1871. The name John "Blount" in the first deed and John "Blunt" in the other, is signed by mark. The land was entered in 1834 by the style of John Blount. The description in the complaint is as follows: All that certain part of the west half of section 3, in township 24 north, of range 11 east, bounded as follows, viz., Beginning at a point on the east line of the southwest quarter of said section 3, 20.28 chains north from the southeast corner of said southwest quarter of said section 3, *the magnetic bearing and the true bearing of said east line of said southwest quarter of said section 3 being north,* and running then west at right angles with said east line of said southwest quarter of said section 3, 10.90 chains, thence north 5 degrees west, or at an angle of 95 degrees with the last-described line, a distance of 13.50 chains; thence south 74 degrees 30 minutes west, or at an angle of 79 degrees 30 minutes with the last-described line a distance of 8.40 chains, thence north, or at an angle with the last-described line of 74 degrees 30 minutes, a distance of 7 chains to the center of the Salamonia River, thence up the middle of the channel of said river to where said channel of said river is intersected by said north line of said southwest quarter of said section 3, thence east with said north line of said southwest quarter of said section 3, 4.51 chains to the northeast corner of said southwest quarter of said section 3, thence south with said east line of said southwest quarter of said section 3 and at right angles with said north line of said southwest

quarter of said section 3, 19.67 chains to the place of beginning, containing 30.33 acres more or less.

The second claim is, that the complaint must contain a certain definite description of the real estate, the title to which is sought to be quieted. On its face there is apparently no difficulty in locating the lines. The lines would be run with reference to the north and south centre line of section 3, being a due north and south line, in addition to the fact that it is alleged in the complaint that the true and magnetic meridian is north, or identical.

It is urged also that the name John Blunt, conveying property entered by John Blount, is not sufficient to support the claim of title. In this appellants are in error. The names are *idem sonans*. *Pinney* v. *State* (1901), 156 Ind. 167, 59 N. E. 383; *Evans* v. *State* (1898), 150 Ind. 651, 50 N. E. 820; *Smurs* v. *State* (1883), 88 Ind. 504; *Williams* v. *Hitzie* (1882), 83 Ind. 303, 307; *Siebert* v. *State* (1884), 95 Ind. 471; *Alvord* v. *Moffatt* (1858), 10 Ind. 366, 367; 29 Cyc. 272-275. Besides, witnesses testified who knew Blount or Blunt, and knew of his possession of the forty-acre tract, and there was no question of identity of the person, and both parties claim through him as the common source of title.

The deed under which appellants claim title describes by metes and bounds 10 acres in the southwest corner of the same 40 acres entered by John Blount, and some of the bearings in that description are identical with those in the deed under which appellee claims, which conveys all the same 40 acres except 10 acres in the southwest corner, disclosing that the same base line was referred to in each. There is this, however, to be said with respect to the description, and it furnishes the basis for the controversy, that the difficulty lies in applying the lines on the ground, and the confusion which arises under the evidence of the surveyors. The real controversy grows out of the fact that owing to the variation of the magnetic meridian north and south from the true

meridian, surveys taken from that north and south line as a base varied, or lines run from it were deflected, depending on whether the base line was taken as the true meridian or the magnetic meridian, the result being that as the magnetic meridian deflected to the west at that point, a right angle from that base would of course deflect to the south of a due east and west line, and the evidence shows that the differences between the parties arise from taking the base or meridian line as a due north and south line, and taking the magnetic meridian as the base from which various lines and courses are run. The courses dividing the lands of appellants and appellee for more than forty years prior to the acquisition by one Miller in 1886 or 1887, of the land now owned by appellants had been distinctly marked by fences; and the remote grantors of appellee had farmed up to these fences on one side, and those of appellants had pastured up to the fences on the other side, which were set in varying courses, owing to the form of each abutting tract, which is quite irregular. Those remote grantors had located, built and repaired fences substantially on the same lines, and with a view to the fences being on the lines during all these years, and there does not seem to have been any other assertion or claim of title on either side. Appellee's father acquired the land north and east of this fence line in 1881, and died in 1900, leaving appellee and five others his sole heirs, and in 1906 appellee obtained a deed for the shares of the others, but had previously purchased from them and gone into possession. One Miller acquired the land now owned by appellants in 1887, and appellants acquired from him in 1901.

One witness, a surveyor, testified to a survey made in 1886 at the request of Miller, who then owned the lands now owned by appellants, to ascertain the lines, for the purpose of obtaining a loan. The title was shortly after vested in the father of said Miller, and the father shortly

reconveyed to Miller and his wife. At that survey Miller and Twibell's father were present. The witness was unable to state whether he was guided in his bearings by the true or the magnetic meridian, but the old fence rows were much grown up, and he testified to finding a stone outside the fence row some eleven feet, in open ground, cleared ground, at the first change of course, as he thinks, in line with the first call and course west from the base line which was the north and south center of the section, and in all the lines then run he treated the north and south line as a true north and south line, and ran his lines according to the needle of his compass. The next call and bearing showed a stone "on cleared land" outside of a point where the old fence row was grown up with bushes, and he turned off the angles and variations to correspond to a due north and south line in the centre of the section to correspond with the calls and bearings. Another surveyor testified to surveys made in 1892 and 1902. That in 1892 he found a stone at the west end of the first call course or bearing to the west from the centre of the section, which was not there in 1902, and the stone was about 11 feet south of the line of fence, and in this respect is somewhat corroborative of the survey of 1886, and run according to the description in the deed, which as to markings is, "running west at right angles with said east line of said southwest quarter, thence north 5 degrees west, or at an angle of 95 degrees with the last described line, thence south 74° 30 min. west, or at an angle of 79° 30 min. with the last described line, thence north, or at an angle with the last described line." It will be seen that these bearings are with reference to the true meridian, but were turned off that meridian to the magnetic meridian, so that the lines of the land were run by the magnetic meridian; that in the survey of 1892, Mr. Miller gave him the description and location of the east line of the quarter section, and he started from a stone corresponding to the description in

the deeds, 20 chains and 28 links north of the fixed corner, but found no stone at the end of the second call and course, where the earlier of 1886 had located a stone.

One surveyor testified that the true meridian and magnetic meridian rarely coincide in that part of the country, and do not on section 3, in which the land in controversy is located; while another testified that the magnetic meridian varies there, and that he tested this identical line, and on this land in 1902, when the needle and the true meridian did coincide, and that there is a difference between the magnetic and true meridian, which do not coincide, and the actual action of the compass needle, and the true meridian, which may coincide; that he had attempted to locate the lines of a survey made in 1854 by one Pearl, which appear to be the lines in controversy here, and that following the bearings as given in the deeds, and treating the true meridian as the base line, he found stakes in the old fence row, at the corners. A surveyor testified that he was called on by appellee in 1901, after the death of his father, William Twibell, after appellee had gone into possession under his heirship and purchase from the other heirs, but before he received a conveyance from them, to locate the line between his lands and appellants' land, then owned by Miller, and that he called on Mr. Miller for a description, and that he gave him one, and he worked from that, and that when he got to the end of the first bearing he said to Mr. Miller, "there is where the corner is," indicating it to Mr. Miller, and the latter said, "well it is not exactly where the fence is, but I don't know where the corners are, and that's what we got you here for." This point was the point about 11 feet south of the fence at the west end of the first call and bearing, in the course of running the line. Another deed in appellants chain of title for ten acres out of the 40 acres in which the trouble arises fixes the north and south lines as varying to the west, in running north, 5 degrees, indicating with the corresponding lines in appellee's chain of title, that

the magnetic meridian and not the true meridian was followed in the subdivision originally made as we understand it in 1854. After these lines were run on March 27, 28, 1901, with Mr. Miller present, he conveyed the land on April 1, 1901, to appellant, Maude Howard, and in June, 1901, said appellant placed a fence on the line indicated by the survey of 1901. No fraud or collusion between appellee and Miller appears.

Except for the action of Mr. Miller there might be serious doubt that title by adverse possession up to the old fence line is not shown in appellee, but here is an admission by Miller, while owner and in possession, both in 1896 and in 1901, in effect at least, an implied assent and a disclaimer of title beyond the survey which is the line given in the complaint as the boundary, and the question is, What was its effect as a matter of law, assuming that the court acted on it, as the evidence most favorable to appellee? That admission was sufficient to toll or interrupt the running of the statute of limitations, if it had not fully run. *Grover* v. *Paddock* (1882), 84 Ind. 244, 247; *Mull* v. *Orme* (1879), 67 Ind. 95; *Steeple* v. *Downing* (1878), 60 Ind. 478; *Logsdon* v. *Dingg* (1904), 32 Ind. App. 158, 69 N. E. 409.

It was an admission of want of title in himself, with appellee in possession of the great bulk of his land, under a deed which appeared to run to the line fixed by the survey, which was constructive possession *(Sinclair* v. *Gunzenhauser, supra),* and under which appellee took possession of the whole up to those lines, and the rule seems to be that this admission is binding on his grantee, the appellants, in the absence of fraud or collusion. *Smith* v. *McClain* (1896), 146 Ind. 77, 88, 45 N. E. 41; *Mc Daneld* v. *McDaneld* (1894), 136 Ind. 603, 606, 36 N. E. 286, and cases cited; *Grover* v. *Paddock, supra; Mull* v. *Orme, supra; Steeple* v. *Downing, supra; City of Boston* v. *Richardson* (1870), 105 Mass. 351; *Inhabitants, etc.,* v.

*Gaffney* (1864), 8 Allen (Mass.) 11; *Berry* v. *Raddin* (1866), 11 Allen (Mass.) 577; *Osgood* v. *Coates* (1861), 1 Allen (Mass.) 77; *Brown* v. *Cantrell* (1879), 62 Ga. 257; *Hayne* v. *Hermann* (1893), 97 Cal. 259, 32 Pac. 171; *Harriman* v. *Hill* (1836), 14 Me. 127; *Parker* v. *Marston* (1852), 34 Me. 386; *Bennett* v. *Camp* (1882), 54 Vt. 36; *Hobbs* v. *Cram* (1850), 22 N. H. 130; *Blount* v. *Hamey* (1891), 43 Mo. App. 644.

A serious question in the case to our minds, and one not adverted to by either party, is as to whether the statute of limitations had not fully run prior to the declarations of Miller, and if so, what was the legal effect of that status, if it existed? The issue presented covers that question, and the court found against appellants. If the statute had fully run in 1886 or 1901, it might be a question whether the statements or implied admissions of want of title in him, by Miller, would affect the question. *Fatic* v. *Myer* (1904), 163 Ind. 401, 72 N. E. 142; *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546; *Moore* v. *Hinkle* (1898), 151 Ind. 343, 50 N. E. 822; *Riggs* v. *Riley* (1888), 113 Ind. 208, 15 N. E. 253; *Logsdon* v. *Dingg, supra;* *Bradford* v. *Guthrie* (1870), 4 Brewst. (Pa.) 351; *Bell* v. *Hartley* (1842), 4 Watts & S. (Pa.) 32. But in Georgia it has been held admissible to prevent the running of the statute, against the owner of the fee. *Long* v. *Young* (1859), 28 Ga. 130; *Cook* v. *Long & Malcolm* (1859), 27 Ga. 280. We express no opinion on that question, for the reason that there was evidence from which the court might have concluded that possession was not claimed as of right, so as to be adverse, within the rule of *Maple* v. *Stevenson* (1890), 122 Ind. 368, 23 N. E. 854, and *Parish* v. *Kaspare* (1887), 109 Ind. 586, 10 N. E. 109, or as claiming only to the true line, wherever that might be, within the rule in *Logsdon* v. *Dingg, supra.* Upon that question we might have differed from the finding of the court below, but there is some

evidence to support it, and we cannot disturb the judgment on the weight of the evidence.

The complaint avers "the magnetic bearing, and the true bearing of said east line of said southwest quarter of said section 3 being north." That fact is testified to by one witness who made the survey from which the description is taken, and the same witness testified that there is a difference between the magnetic bearing and the magnetic meridian, and that the magnetic bearing or diurnal variation and the true meridian may coincide, and did in this case, but that the magnetic meridian and the true meridian never coincide in that locality. It is a recognized, scientific fact that the so-called "secular variation," found by taking accurate observations in the same place for several years, varies many degrees east, and also west, of the true meridian at different times. It seems to us that if the magnetic bearing and the true meridian coincide as a due north and south line, and is the base line from which the others were run, the lines as claimed by appellants would be the true lines; while if the magnetic meridian was the base line, the lines as claimed by appellee are the true lines, but we are unable to reconcile the lines as claimed by appellee with a due north and south line. Perhaps it may be done, but neither the evidence, nor any assistance of counsel gives us any aid, and we are bound to presume the court below was so aided as to arrive at the conclusion it did. It may be that the description of the magnetic bearing and the true bearing as being due north and south was intended, or in the science of surveying was inserted, as stating a fact, or as distinguishing it from the magnetic meridian, which latter appears to us in fact to have been the real base line from which the other lines were run, both from the variation shown and also from the fact that they were run with a compass. At any rate, we would not be justified in reversing the judgment, and it is accordingly affirmed.

Note.—Reported in 100 N. E. 372. See, also, under (1) 2 Cyc. 758; (3) 32 Cyc. 1331; (4) 32 Cyc. 1371; (6) 1 Cyc. 1033; (7) 16 Cyc. 986; (8) 3 Cyc. 348. As to adverse possession in general, see 28 Am. St. 158. As to adverse possession of part of a tract as possession of the whole, see 88 Am. St. 703; 125 Am. St. 302. As to the doctrine of *idem sonans*, see 100 Am. St. 322; 7 L. Ed. U. S. 581; 20 L. Ed. U. S. 830. As to the occupancy necessary to constitute adverse possession see 9 L. Ed. U. S. 624. On the question of mistake in name as affecting marketability of title, see 38 L. R. A. (N. S.) 21.