*524
 
 ''Gardiner, J.
 

 I am inclined to the opinion, that the decree dismissing the bill of William J. Van Zandt, absolutely, and without reservation, was conclusive evidence of the validity of the deed executed by Thomas Van Zandt to Van Antwerp, on the 14th of August 1816. The decision was after proofs taken, and upon the merits, and I am unable to perceive, why this case should be excepted from the general principle, that a party shall be concluded from insisting in his defence to a second suit between the same parties, or their representatives, upon piatters which were actually litigated and determined against him in a former one. (5 Conn. 550;
 
 8
 
 Id. 268; 2 Cow.
 
 &
 
 Hill’s Notes 826.) In the first suit, in which William J. Van Zandt was complainant, and the trustee, and
 
 cestuis que trust
 
 under the deed of settlement, were defendants, the validity of that conveyance was affirmed by one party and denied by the other. The evidence was directed to this issue, and the decree above alluded to cannot be upheld, except upon the supposition that the court of chancmy determined that issue in favor of the defendants.
 
 [1]
 

 It was argued, that the deed could f.-vly operate as a deed of bargain and sale, and as such, it was void for want of a pecuniary consideration, and that this question was not presented or determined in the former suit.
 

 The answer is, that the question is not made in this case by the pleadings, nor was it raised in the court below, so far as we can judge from the opinion before us. William J. Van Zandt, in his answer, nowhere claims that the conveyance was not effectual between the parties to it, if obtained without fraud. The objection is of the most technical character (3 Johns. 492), and in this stage of the proceedings, may be properly met by a technical answer.
 

 
 *525
 
 * Again, the referee in this cause has found, and in this finding the supreme court concur, that if this controversy was
 
 res nova,
 
 there is not evidence to impeach the deed of settlement. By this conveyance, if we assume its validity, the fee of the premises rested in Van Antwerp, in trust for “the use and benefit of the grantor, during his life, then for the use of Mrs. Van Antwerp, his sister, for life, at her death to be conveyed in fee to her children.” The deed was duly recorded, but the grantor, having the beneficial interest in the property for life, remained in possession, with the assent of the trustee, and received the rents and profits. Under these circumstances, the judgment in favor of John Van Zandt was obtained, and the interest of- Thomas in the property, sold by the sheriff. Thomas had no right or title, legal or equitable, at this time, in this property, but that which was secured him by the deed of settlement; his possession was consistent with that deed, and whether he is considered as tenant at the will of the trustee, or for life, in either case, it was in subordination to the title and estate which he had voluntarily conveyed to his trustee.
 

 William J. Van Zandt, the purchaser at the sheriff’s sale, could acquire no higher right than that of the debtor. (2 Ves. sen. 481; 18 Johns. 94.) He succeeded to the possession of Thomas Van Zandt, with all its incidents.
 
 (Jackson
 
 v.
 
 Graham,
 
 3 Caines 188.) He was, therefore, like the judgment-debtor, bound to surrender the possession held under the trustee, in virtue of the deed of settlement, before he could question the right of the former, or lay the foundation of an adverse possession.
 

 There was no claim inconsistent with the rights of those holding or claiming an interest under the deed, until September 1828, when the purchaser filed his bill to set aside the settlement, as fraudulent. Up to this time there was no apparent change of possession; Thomas Van Zandt continued to receive the rents, or some p&rt of them, and there was nothing to indicate that William J. Van Zandt claimed in hostility to the deed executed by Thomas. From 1828 to the commencing of the ejectment suit by Mrs. Van Antwerp, in October 1842, was *fourteen years, and to the ~ filing of the bill, in September 1845, about seven- *- teen years only. The statute of limitations has not run, therefore, so as to bar the rights of the complainants, nor can the commencement and prosecution of the first suit by William J. Van Zandt, be claimed as in any way changing his relation to the
 
 cestuis que trust.
 

 That litigation, as we have seen, terminated in establishing that William J. Van Zandt acquired no right under the sheriff’s deed, to the prejudice of those claiming under the settlement; on the contrary, the decision established that the title of the purchaser, whatever it was, was in subordination to the deed to Van Antwerp. William J. Van Zandt acquiesced in that decision, as correctly settling the rights of all parties, and, after purchasing the right of one of the
 
 cestuis que trust,
 
 set himself to defeat the interests of his equitable co-tenants, by a redemption or re-purchase of the premises which he had suffered to be sold for a small assessment. The learned judge, whose opinion is before us, seems to think, that it cannot be supposed that he intended to abandon his title by the purchase from Stephen L. Van Antwerp, and, if he did not, he was authorized, being in possession^ to purchase an outstanding title, without changing the character of his claim. The answer is, that he had preferred that claim, for the first time, in the court of chancery, which had determined against it as early as October 1833. He acquiesced, as we have seen, in the judgment of the tribunal to which he had appealed.
 

 Under these circumstances, the more legitimate presumption would seem to be, that, in his opinion, the decision was just, and that he intended to abide by it,
 
 *526
 
 instead of repudiating it by insisting on an absolute title to the whole premises. Accordingly, he subsequently purchases the interest of Stephen L. Van Antwerp, one of the
 
 cestuis que trust
 
 in remainder.
 
 The.primd facie
 
 inference from the act is, that the purchaser believed that the vendor had some interest, existing or contingent, under the settlement, rather than that he had nothing to sell. The presumption is not weakened by the fact, that a court of equity, after a contestation, had -j pronounced in favor of *the conveyance. He next -* suffers the property to be sold to a friend, for a trifling city tax, with ample resources — the issues of the premises in question — in his hands at the time; and subsequently, on the 20th of July 1838, he procured an assignment from Packard, the vendee of the city, and paid him as he alleges in his answer, $200 for the “ repurchase and redemption of the premises.”
 

 The conduct of the defendant in these particulars, seems rather to indicate a design to forego his claim to an exclusive title under the deed of the sheriff, in order to secure to himself the fee through the tax-sale. At all events, the most that he can claim for his acts and declarations is, that they are equivocal. There can beno injustice, therefore, in limiting this defendant to the rights which he actually possessed in law and equity, and in holding him to the responsibilities which those rights, and the relations arising from them, imposed upon him. If he repudiates the title which the law adjudges to him, in order to establish an adverse possession, his acts should, at least, be unequivocal.
 

 If we are right in this, the case is disposed of. The defendant, William J. Van Zandt, obtained by voluntary purchase, the interest of one of .the
 
 cestuis que trust,
 
 and thus became-a co-tenant with the other children of Mrs. Van Antwerp, in equity, in the remainder secured to them by the deed of settlement. Under these circumstances, while in possession, as we have seen, under f1- *
 
 *527
 
 conveyance, he could not rightfully redeem or purchase the common property for his exclusive benefit; the cases of
 
 Van Horne
 
 v.
 
 Fonda
 
 (5 Johns. Ch. 388) and
 
 Holridge
 
 v.
 
 Gillespie
 
 (2 Id. 30) are full to this point. He represented the interest of Thomas, who was entitled to the rents and profits of the premises for life, and the share of Stephen L. Van Antwerp, one of the remainder-men, and was bound to protect the interest of those who stood in the same relation with himself to the property.
 

 So far from doing this, the whole transaction in reference to the sale by the corporation of Albany, the purchase by Packard, and the assignment to the defendant, was obviously collusive, and designed to vest the estate in the latter, to the prejudice of *all others interested in the premises. The sum *- paid for the redemption or repurchase, shows- that the original purchase by Packard was not for himself but for his friend. No sane man would have suffered the sale of valuable property, yielding a large income, to pass from him in this way, without some understanding, express or implied, that it should be reconveyed. Indeed, in his answer, the defendant does not set up the title acquired by the assignment, but only insists upon the sum paid on the repurchase and redemption, in connection with other
 
 liens
 
 there mentioned, as having been discharged by him.
 

 The judgment of the supreme court, for the reasons assigned, should be reversed, and a decree entered substantially in accordance with the decision of the referee.
 

 Judgment reversed.
 

 [1]
 

 The decree of a court of chancery, dismissing a bill upon its merits, is conclusive between the parties. Kelsey v. Murphy, 26 Penn. St. 78. It is as conclusive as a judgment at law. Westcott v. Edmunds, 68 Ibid. 34.