JAMES GREEN et al., Appellants, v. CHARLES F. W. HORN,
Respondent.

**Real property — adverse possession — champerty — boundaries
— when monuments do not control.**

1. To avoid a deed under the Champerty Act (L. 1896, ch. 547,
§ 225) the adverse possession must be under a claim of some specific
title, not necessarily a good title, but still a paper title as distinct
from a general assertion of ownership, a title under some written
instrument purporting to convey the lands to the claimant, or else
some judgment, decree or executed process of a court.

2. Where parties to a deed merely refer by name to another par-
cel as fixing the starting point or a boundary of the parcel con-
veyed they must be deemed to have intended the true line and not
the line of occupation of the parcel referred to. Especially must
that be so where the grantor only owns to the true line.

3. In an action of ejectment the land in dispute abuts upon a
certain plank road. Plaintiff holds the record title, but defendant
is in possession, and asserting that the description in a deed to his
grantor of adjoining property fixes the starting point in the line of
the plank road, and invoking the rule that monuments control
quantity, courses and distances, argues that the description goes to
the plank road and takes in the parcel in dispute, and that while
no title to that parcel was conveyed, his possession of it under that
deed renders the plaintiff's deed champertous. The description in
question starts the boundary line at the southeast corner of an
adjoining lot, the east line of which is shown upon a certain map and
referred to in a certain deed as being coincident with the west line of
the plank road. As a matter of fact, however, the true east line of
said lot is forty-nine feet west of the plank road. It also appears
that the lines in the description do not close and cannot be made to
close unless the starting point be located at the true southeast cor-
ner of the lot referred to, and the third line be made to end at the
line of the land in which defendant's grantor held an interest.
*Held,* that the rule that monuments control courses and distances
is merely a rule of construction to ascertain the intention of the
parties. If that intention is otherwise plainly manifested it need
not be ignored in blind adherence to such a rule; that considering
the language of the grant in the light of the facts, it is plain that

the intention was to convey only the land in which the defendant's grantor held an interest, and that such intention must prevail over a manifest error.

*Green* v. *Horn,* 146 App. Div. 896, reversed.

(Argued January 29, 1913; decided March 11, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered October 9, 1911, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. A. Kellogg* for appellants. There was sufficient evidence to entitle the plaintiffs to go to the jury on the question of adverse possession. (*Sands* v. *Hughes,* 53 N. Y. 287; *Fleming* v. *Burnham,* 100 N. Y. 1; *Cutting* v. *Burns,* 57 App. Div. 185; *Horn* v. *Worden,* 113 App. Div. 893; *Miller* v. *Platt,* 5 Duer, 272.) The defendant's deed does not include within its description any part of the premises in dispute, and if this is not so as a matter of law, then the construction of the deed was a question of fact for the jury. (*Crary* v. *Goodman,* 22 N. Y. 170; *Laverty* v. *Moore,* 33 N. Y. 658; *Higinbotham* v. *Stoddard,* 72 N. Y. 94; *Arents* v. *Long Island R. R. Co.,* 156 N. Y. 1; *Saranac L. & T. Co.* v. *Roberts,* 125 App. Div. 333.) The deed from Eliza McGillis conveys only lands in Great lot 20, and does not purport to convey any part of the Fort William Henry fields. (*Brookman* v. *Kurzman,* 94 N. Y. 276; *Ousby* v. *Jones,* 73 N. Y. 621; *Benjamin* v. *Welch,* 73 Hun, 371; *Coleman* v. *Beach,* 97 N. Y. 545.) The rule that in the construction of a deed courses, distances and quantities must yield to natural or artificial monuments called for by the grant is not inflexible, and where there is anything in the description showing that the courses and distances are right they will prevail. (*Higinbotham* v. *Stoddard,* 72 N. Y. 99; *B., N. Y. & E. R. R.*

*Co.* v. *Stigeler,* 61 N. Y. 348; *People ex rel. Burnham* v. *Jones,* 112 N. Y. 597.) The deed from Eliza McGillis to Elizabeth G. Horn is void for the reason that the description does not close. (*Wheeler* v. *Spinola,* 54 N. Y. 377; *Den* v. *Cunningham,* Mart. & Yerg. [Tenn.] 73; *M'Nairy* v. *Hightour,* 2 Over. [Tenn.] 302; *White* v. *Hembree,* 1 Over. [Tenn.] 529; *Embanks* v. *Harris,* 1 Spears L. [S. C.] 183; *Doe* v. *King,* 3 How. [Miss.] 125; *Newman* v. *Foster,* 3 How. [Miss.] 383; *Grier* v. *Penn. Coal Co.,* 129 Penn. St. 79; 4 Am. & Eng. Ency. of Law, 808.)

*Charles M. Parsons* and *H. Prior King* for respondent. The deed to James Green of the property in the gore from Catherine T. R. Mathews and others was and is void under the statute known as the Champerty Act (Cons. Laws, ch. 50, § 260). In construing the boundary of the deed to the defendant, a well-recognized and settled doctrine must be applied, to wit: That natural and artificial monuments are more certain and must be accepted in preference to courses and distances. (*Wendell* v. *People,* 8 Wend. 183; *Yates* v. *Van De Bogert,* 56 N. Y. 526; *People* v. *Jones,* 112 N. Y. 567.)

MILLER, J. This is an ejectment action to recover possession of two parcels of land in the village of Lake George, Warren county, known respectively as Middle Village Lot No. 7 and the "Waldorf." The plaintiffs have the record title to both parcels. The defendant in his answer disclaimed title to or possession of said lot No. 7, but averred that he had title to the other parcel by adverse possession and that the conveyance thereof to the plaintiff was void for champerty. The trial court directed a verdict for the defendant on the latter ground, and that ruling presents the only point for consideration on this appeal, as the respondent concedes that the evidence bearing on the other defense at least presented a question of fact.

It is admitted that at the time of the conveyance to the plaintiffs of the parcel in dispute the defendant was in actual possession of it. The champerty act in force when said conveyance was made (Real Property Law, Laws of 1896, chap. 547, section 225) provided:

" A grant of real property is absolutely void if, at the time of the delivery thereof, such property is in the actual possession of a person claiming under a title adverse to that of the grantor."

The phrase " claiming under a title " is unlike the phrase " under a claim of title " in the Statute of Limitations (sections 369 and 371 of the Code of Civil Procedure), and it is the settled law of this state that to avoid a deed under the former statute the adverse possession must be under a claim of some specific title, not necessarily, of course, a good title, but still a paper title as distinct from a general assertion of ownership, a title " under some written instrument purporting to convey the lands to the claimant, or else some judgment, decree or executed process of a court." (*Arents* v. *Long Island Railroad Company*, 156 N. Y. 1, and see cases cited by Judge HAIGHT on page 8 of the opinion; also *Higinbotham* v. *Stoddard*, 72 N. Y. 94, and *Matter of Department of Parks*, 73 N. Y. 560.) The decision, therefore, turns on the construction and effect of the deed under which the defendant claims.

William Caldwell, the common source of title, died May 1st, 1848, possessed of a large tract of land in the town of Caldwell, at the head of Lake George. By a codicil to his will he devised the residue of his real estate in the said town, which included two tracts known as Lot 20, Garrison Ground, and Fort William Henry Fields, to Eliza McGillis, Catherine Elizabeth Van Courtlandt and Helen Louisa Beck, the devise to McGillis being of a life estate with remainder to her issue. Commissioners, appointed by an interlocutory judgment in a partition suit, allotted Lot 20, Garrison Ground, to McGillis

and the remaindermen, and Fort William Henry Fields
to Van Courtlandt and Beck, then Parmalee, in common.
Their report was confirmed by an order entered August
30th, 1852, and the said parties thereupon entered into
the use, occupation and enjoyment of the lands respec-
tively allotted to them. Fort William Henry Fields
adjoined Lot 20, Garrison Ground, on the east. A high-
way, known as the Glens Falls and Lake George plank
road, hereinafter referred to as the plank road, ran through
Fort William Henry Fields a short distance east of. and
nearly parallel with the division line between it and lot 20,
so that there was a narrow strip about thirty feet wide at
its northern and sixty feet at its southern extremity
belonging to Fort William Henry Fields, but lying
between the plank road and lot 20. From the said north-
ern extremity, the extension of the plank road was known
as Canada street, but there was a jog at that point, the
west line of Canada street beginning at the northeast
corner of lot 20, and being an extension of its east line.
At some time, it does not appear precisely when, lot 20
was laid out into village lots, a map of which, known as
the " Black " map, was filed in the Warren county clerk's
office, October 17th, 1888. That map delineated the plank
road as an extension of Canada street at its full width —
in other words, as including said narrow strip and as
having for its west line the east line of lot 20. Eliza
McGillis at sundry times quitclaimed to various grantees
different small lots or subdivisions of lot 20. In Decem-
ber, 1881, by her attorney in fact, she made a quitclaim
deed to Elizabeth G. Horn, the defendant's mother. It is
plain, as will be seen later, that the description in that
deed was intended to include only two small lots in the
southeast corner of great lot 20, i. e., lot 6 and said
lot 7, in which the grantor had a life estate. The part of
said narrow strip between lots 6 and 7 and the plank road
is the parcel in dispute.

Eliza McGillis died on the 8th day of December, 1893.

Thereafter a partition suit was brought by Robert A. McGillis, one of the said remaindermen. The grantees of Eliza McGillis were joined as defendants. Final judgment was entered June 9th, 1900. It recited that commissioners had set off in severalty and allotted to Maria S. Macdonell lots 4, 5, 6 and 7, and adjudged among other things that the report of the commissioners stand ratified and confirmed, and that different defendants named, including said Elizabeth G. Horn, "have no title or claim of title to the several properties or premises quitclaimed to them or their grantors or devisors by the said Eliza McGillis." Maria S. Macdonell conveyed said lot No. 7, and the respective devisees of the said Van Courtlandt and Parmalee, to whom Fort William Henry Fields was allotted under the partition of 1852, conveyed the parcel in dispute to the plaintiff Green by deeds dated February 1st, 1905. On the same day he executed a declaration of trust in both of the said parcels in favor of himself and the other plaintiffs.

On January 8th, 1902, the defendant's mother made a warranty deed to him purporting to convey, among other parcels of land, the following:

" Also that piece or parcel of land conveyed to Elizabeth G. Horn by quitclaim deed from Eliza McGillis, by deed dated December 24th, 1881, and recorded in the Clerk's office of Warren County, in Liber 41, at page 218, which is referred to for a more particular description." The description in the McGillis deed, therein referred to, was as follows:

" All that piece or parcel of land situate, lying and being in the Town of Caldwell, Warren Co., State of New York, being a portion of lot twenty (20) Garrison Ground, beginning at south-east corner of steam mill lot being north sixty-one (61) degrees fifteen (15) minutes west, running thence west of north five (5) chains thirteen (13) links to the east line of Dieskau Street, thence south three (3) degrees west along the street five (5) chains twenty-five

(25) links, thence north eighty-six (86) degrees east four (4) chains twenty-five links to plank road, thence north twenty-eight (28) degrees thirty (30) minutes east two (2) chains fifty (50) links, containing one (1) acre twenty-five (25) rods more or less."

The defendant asserts that the reference to the steam mill lot fixes the starting point in the west line of the plank road, and, invoking the rule that monuments control quantity, courses and distances, he argues that the description goes to the plank road and takes in the parcel in dispute, in which the grantor had no interest whatever, and that, while no title to that parcel was conveyed, his possession of it under that deed rendered the plaintiffs' deed champertous.

The defendant and his grantor were bound to know that McGillis had and could convey only an estate for her life. (*Acer* v. *Westcott*, 46 N. Y. 384; *Sweet* v. *Henry*, 175 N. Y. 268.) Their possession, being in subordination to and in privity with the title of the remaindermen, did not become hostile even after the termination of the life estate in the absence of some positive act of disclaimer brought home to the latter. (*Zeller's Lessee* v. *Eckert*, 45 U. S. [4 How.] 289; *Jeffery* v. *Hursh*, 45 Mich. 59; *Doyle* v. *Mellen*, 15 R. I. 523; *Jackson* v. *Graham*, 3 Caines, 188; *Jackson* v. *Sternbergh*, 1 Johns. Cas. 153; *Jackson* v. *Scissam*, 3 Johns. Rep. 499; *Jackson* v. *Stiles*, 1 Cowen, 575; *Jackson* v. *Burton*, 1 Wend. 341; *Burhans* v. *Van Zandt*, 7 N. Y. 523; *Whiting* v. *Edmunds*, 94 N. Y. 309; *Bedlow* v. *New York Floating Dry Dock Co.*, 112 N. Y. 263.) The defendant's deed purported to convey only what was conveyed by the deed to his grantor. It was adjudged in effect in a suit in which his grantor and the plaintiffs' grantor of lot 7 were parties, that nothing more than a life estate was conveyed by the latter deed. But, although the defendant does not and could not successfully assert that he was in adverse possession of lot 7, in which his remote grantor

had a life estate and which she intended to convey, he may, if the judgment appealed from is right, assert adverse possession of a smaller parcel in which said grantor had no estate or interest and which was included in the description, if at all, by mistake, and he may do that " under a title " sufficient to avoid as champertous a deed of the rightful owner. Without assenting to that proposition, I refer to it to show that the construction of the deed upon which it is based ought at least to be reasonably plain.

It is essential to that construction that the starting point be located in the west line of the plank road. Referring back to that description, it will be observed that it does not expressly locate the starting point in said line. The Black map represents the mill lot as one hundred fifty feet square, consisting of subdivisions 4 and 5 of lot 20, next north of lot 6, and bounded on the east by the plank road. The east line, however, is correctly located. The error in that map, as already stated, consisted in the representation of the west line of the plank road as coincident with the east line of lot 20. It is probable, though it has to be inferred, that the McGillis deeds were made with reference to the Black map or some map of which it was a copy. If that map be taken as locating the steam mill lot, the starting point, while in the west line of the plank road, as shown thereon, is forty-nine feet west of where it actually existed. The defendant locates the starting point by reference to a quitclaim deed of the mill lot from McGillis to Nichols in 1877, containing the following description:

" All that certain piece or parcel of land lying and being in the Town of Caldwell, County of Warren, State of New York, being a portion of subdivision of Lot number twenty (20), Garrison Grounds: Beginning at a point in the west line of the Lake George and Glens Falls Plank Road, being north sixty-one (61) degrees thirty-one minutes west from the center of a culvert under said Plank

Road, running thence north sixty-one (61) degrees and thirty (30) minutes west one hundred and fifty (150) feet to a point that would be intersected by a continuation of the east line of the alley lying parallel with and west of Canada Street in the Village of Caldwell. Then south twenty-eight (28) degrees and thirty (30) minutes west one hundred and fifty (150) feet. Then south sixty-one (61) degrees and thirty (30) minutes east one hundred and fifty (150) feet to the west line of the aforesaid Plank Road. Then north twenty-eight (28) degrees, thirty (30) minutes east along the west line of the said Plank Road one hundred and fifty (150) feet to the place of beginning containing fifty-two (52-100) one hundredths acres of land, be the same more or less." The meaningless words in the description of the starting point in the deed to the defendant's grantor, "being north sixty-one (61) degrees fifteen (15) minutes west," may have been taken from the latter description, omitting the words "from the center of a culvert under said plank road." But that was an obvious error, as those words in the Nichols deed refer to the northeast corner of the mill lot, whereas the starting point in the other deed is the southeast corner. The description in the Nichols deed is of a lot one hundred fifty feet on a side, containing fifty-two one-hundredths acres of land, the correct quantity for those dimensions; but, if the monuments, the plank road and the alley control, there is a glaring error, the more surprising in view of the size and dimensions of the lot plainly intended to be conveyed. That error, too, may be accounted for by the Black map. The entire description is correct if the "plank road" be taken to mean the plank road as delineated on that map and not as it actually existed. We have not now to decide whether Nichols and her grantees could successfully assert adverse possession of the strip between lots 4 and 5, and the plank road "under a title." The description in their deed, unlike that in the deed in question, in terms locates both the starting point

32

and the end of the third course in the west line of the plank road and runs the last course along that line "to the place of beginning." Whatever that description might be deemed to include as the foundation of an adverse possession, the deed conveyed no title to the parcel east of the east line of lot 20. That was the true east line of the steam mill lot, the parcel in which the grantor had an interest. We might have a different case if the description in the Nichols deed had by express reference been incorporated in the deed to the defendant's grantor. But there is weighty, if not controlling, authority for the proposition that where, as here, the parties merely refer by name to another parcel as fixing the starting point or a boundary of the parcel conveyed, they must be deemed to have intended the true line and not the line of occupation of the parcel referred to. (*Cornell* v. *Jackson*, 9 Metc. 150; *Cleaveland* v. *Flagg*, 4 Cush. 76.) Especially must that be so where the grantor only owns to the true line.

Starting, then, at the true southeast corner of the mill lot, the first course of the description under which the defendant claims is correctly described and reaches Dieskau street; the second course along Dieskau street is correct; the distance of the third course is wrong — it goes beyond the east line of lot 20 and falls short of the plank road; the fourth course extends diagonally into the plank road and does not close by several feet, irrespective of whether the starting point be located in the west line of the road or in the east line of lot 20. This is obviously so as the plank road at that point bears to the west of north, and the fourth course is not along the west line of the plank road to the place of beginning, but is "north twenty-eight (28) degrees thirty (30) minutes east." A deed containing a description, whose lines do not close, cannot be the basis of an adverse possession under a claim of title founded on a written instrument. (*Wheeler* v. *Spinola*, 54 N. Y. 377.) If the starting

point be located at the true southeast corner of the mill lot and if the third course be made to end at the east line of lot 20, the lines, described, do approximately inclose said lots 6 and 7, in which the grantor had a life estate as hereinbefore stated.    In no other way can said lines be made to close unless either the starting point or the end of the third course be arbitrarily selected to accomplish that result.

The plank road is only referred to in the location of a single point.    The rule that monuments control courses and distances is merely a rule of construction to ascertain the intention of the parties.    If that intention is otherwise plainly manifested, it need not be ignored in blind adherence to such a rule.    (*Brookman* v. *Kurzman*, 94 N. Y. 272; *Higinbotham* v. *Stoddard*, 72 N. Y. 94; *Townsend* v. *Hayt*, 51 N. Y. 656.)    In the *Higinbotham* case, distance and quantity were allowed to control over a monument, and the grantor actually owned to the monument.    That case is particularly applicable as the grantee in the deed containing the erroneous reference to the monument was in possession and undertook to defend an ejectment suit, brought by a subsequent grantee, on the ground that the latter's deed was champertous.    It is unnecessary in this case to indulge in the presumption that the grantor did not intend to convey land in which she had no interest, because she expressly described the parcel conveyed as "being a portion of lot twenty (20) Garrison Ground."

To summarize: the grantor had no interest whatever in the parcel east of the east line of lot 20.    The true location of the southeast corner of the mill lot, however it may have been described in some deed, not referred to, was in that line.    By locating the starting point and the east end of the third course in that line, the description is intelligible and identifies lots 6 and 7, in which the grantor had a life estate, as the parcel intended to be conveyed.    If those two points are located in the west line of the plank

road, the deed must be rejected because the description does not inclose any land, or the description of the east line must be rejected, and one supplied which will run the east line along the west side of the plank road to the place of beginning, thus inclosing land in which the grantor had no interest.  Considering, then, the language of the grant in the light of the facts, which may properly be taken into account, it is plain that the intention was to convey only lots 6 and 7.  That intention must control over a manifest error.

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, CHASE, COLLIN and CUDDEBACK, JJ., concur.

Judgment reversed, etc.