McNICHOL et al. v. FLYNN.   (No. 7235.)

(Supreme Court, Appellate Division, First Department.   May 7, 1915.)

1. BOUNDARIES ⬪3—DESCRIPTION—RELATIVE WEIGHT—COURSE AND DISTANCE AND MONUMENTS.
   The general rule that a description by monuments controls over that by course and distance is one of construction only, and does not apply where it is manifestly against the intention of the parties.
   [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⬪3.]

2. BOUNDARIES ⬪3—DESCRIPTION—RELATIVE WEIGHT—COURSE AND DISTANCE AND MONUMENTS.
   Where monuments have disappeared, and their original location cannot be determined with precision, the description by course and distance, if explicit, must govern.
   [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⬪3.]

3. BOUNDARIES ⬪48—LOCATION BY PARTIES—ACQUIESCENCE.
   Where the owners of adjoining premises, the boundaries of which were in dispute, agreed on a boundary and constructed a division fence thereon, which was allowed to stand for more than 20 years, that line was established as the boundary by consent and acquiescence of the parties.
   [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 232–242; Dec. Dig. ⬪48.]

⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Bronx County.

Action by Francis P. McNichol and others against Margaret Flynn. Judgment for the defendant on trial by the court, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Henry G. K. Heath, of New York City, for appellants.
Lawrence E. French, of New York City, for respondent.

SCOTT, J. The action is in ejectment for the recovery of a strip of land about 15 feet in width, fronting on Rowland avenue, in the county of Bronx. The property lying to the north of this strip of land concededly belongs to defendant; that to the south to the plaintiff. The disputed strip was in possession and occupancy of plaintiff (and his brother now deceased) from 1891 to 1913, when defendant forcibly removed the division fence so as to exclude plaintiff from such possession and occupancy.

Both parties claim title from John Townshend, who acquired a large plot, including the properties in question, in 1879. On April 21, 1886, Townshend conveyed to plaintiff and his brother Bernard W. McNichol a plot of land at the northwesterly corner of the Southern Westchester turnpike (afterwards known as Westchester avenue) and Washington avenue (afterwards and now known as Rowland street). This plot, by its description, extended along the southwesterly side of Washington avenue 135 feet and 4 inches.

On September 29, 1886, Townshend conveyed to one John K. Wilson a plot of land on Washington avenue, beginning at a point 135 feet 4 inches from the Southern Westchester turnpike (being the point to which the land conveyed to the McNichols extended), and running thence along said Washington avenue a distance of 115 feet. On October 25, 1886, the said John K. Wilson conveyed the last-mentioned lot, by the same description, to plaintiff and his brother Bernard W. McNichol, who thus became the owners, according to the courses and distances contained in the deeds under which they acquired title, of a plot of land fronting on Washington avenue, now Rowland street, and running back along said avenue a distance of 250 feet 4 inches from the Southern Westchester turnpike as it then existed. The plot thus described included the strip of land in controversy in this action.

Defendant's title is derived from John Townshend through a deed executed by him on April 13, 1889, whereby he conveyed to one Dunn a plot of land described as "beginning on the southwesterly side of Washington avenue, at the northeasterly boundary line of land now or late of John K. Wilson distant two hundred and fifty feet four inches more or less northwesterly from the corner formed by the intersection of the said southwesterly side of Washington avenue and the northwesterly side of Southern Westchester turnpike.". From this point the description carried the plot in a northerly direction along the southwesterly side of Washington avenue. The plot thus described included no part of the parcel in controversy.

There would be no doubt whatever, upon these facts, of plaintiffs'

ownership and right to possession of the strip of land in controversy, were it not for a clause in the deed from Townshend to Wilson, repeated in that from Wilson to plaintiff and his brother, which, as defendant insists, modifies and controls the amount of land conveyed by those deeds. After describing the land to be conveyed by courses and distances, which, as has been seen, would include the disputed strip, each deed contains this clause:

"The plot intended to be conveyed being bounded by the lands late of A. Field, the lands of the Friends Meeting House, the garden plot occupied by A. Arnow, and by Washington avenue."

The defendant offered evidence tending to show that at the time of the deed from Townshend to Wilson, and from the latter to the brothers McNichol, one A. Arnow occupied, as a tenant of Townshend, a piece of land including that afterwards acquired by defendant, and including also the strip of land now in dispute, and that there was a division fence then standing at about the southerly line of said strip. Upon this circumstance, the defendant bases her claim that title to the disputed strip never vested in plaintiff, and consequently that, since a plaintiff in ejectment must succeed, if at all, upon the strength of his own title and not upon the weakness of that of his adversary, the plaintiff is not entitled to succeed in this action.

[1] The general rule that monuments control courses and distances relied upon by defendant is well established. It was thus stated in People ex rel. Burnham v. Jones, 112 N. Y. 597, 20 N. E. 577, and has been applied in numberless cases:

"The rule is well settled that where there is an uncertainty as to the plot of land intended to be conveyed, arising out of differences between the land described by metes and bounds, and that embraced in lines extending to natural or artificial monuments or objects mentioned in the deed, the former shall give way, as being less certain, and be controlled by the latter description."

This rule, while well established, is, after all, but a rule of construction as a means of ascertaining the intention of the parties to the deed. As was said in a very recent case:

"The rule that monuments control courses and distances is merely a rule of construction to ascertain the intention of the parties. If that intention is otherwise plainly manifested, it need not be ignored in blind adherence to such a rule." Green v. Horn, 207 N. Y. 489, 499, 101 N. E. 430, 434.

Again:

"The rule stated is not inflexible, and has some exceptions. It applies with less force to monuments which are artificial than to natural and permanent; * * * and, when there is anything in a description which shows that the courses and distances are right in themselves, they will prevail, because the primary object in all cases is to carry out the intention of the parties, as, when it is apparent from the face of the deed that the intention was to convey a specific quantity of land, if the courses and distances given would include such quantity, and the description by monuments embraced more or less, the former should be followed." Higinbotham v. Stoddard, 72 N. Y. 94.

[2] It is also the rule that if monuments once existing are gone, and the places where they originally stood cannot be ascertained and located with precision, the courses and distances, when explicit, must govern. Drew v. Swift, 46 N. Y. 204, 209.

The evidence in the present case, while indicating that the division fence bounding the land formerly occupied by Arnow stood some distance south of a line 250 feet north of the Southern Westchester turnpike, fell far short of locating the line on which it did stand with precision. Furthermore, since what we have to discover is the intention of Townshend, we may consider that, when he came to convey the land lying north of that previously conveyed to Wilson, he did so by a description which began where the description in Wilson's deed left off, thus clearly excluding defendant's ancestor in title from the ownership of anything lying less than 250 feet 4 inches from the Southern Westchester turnpike.

If there were nothing else in the case, we should find it difficult to deny plaintiff's claim of title to the disputed strip.

[3] There are, however, other circumstances which, in our opinion, are controlling. The question as to the ownership of the disputed strip by the brothers McNichol became acute as early as 1891, and they then procured a survey to be made with a view to fixing the northerly line of their property, which was thereby located at the northerly boundary of the disputed strip. Thereupon the McNichols, "with the knowledge and consent of Michael Flynn," then the owner of the property now owned by defendant, as the court has found, erected a division fence at a line 250 feet and 4 inches from the Southern Westchester turnpike, thus inclosing into the property occupied by the McNichols the strip of land which is the subject of this action. Michael Flynn not only consented to the erection of the fence on this line but actually contributed to the expense of its erection. From that date until 1913, a period of 22 years, the strip has remained in the undisturbed possession of plaintiff and his brother. Michael Flynn in his own behalf or in behalf of his wife, the present owner, though asserting from time to time a disposition to cause the fence to be restored to its former position, never actually took any steps to compel such restoration. In 1913 Flynn forcibly removed the fence to its old position, thus ejecting plaintiff from possession of the strip.

Assuming that there was in 1891 an honest dispute and perhaps a fair question of difference as to whether or not plaintiff and his brother had acquired title to the strip in question, we are of opinion that the practical location of the boundary line by consent of the parties in 1891, and the long-continued acquiescence in that location, conclusively establishes, as between the parties to this action, the plaintiffs' title and right to possession of the strip in controversy. The rule applicable to such a case is well settled and has often been applied.

"The acquiescence in such cases affords ground, not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct legal inference as to the true boundary line. It is held to be proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary." Baldwin v. Brown, 16 N. Y. 363; Reed v. Farr, 35 N. Y. 113, 117; Katz v. Kaiser, 154 N. Y. 294, 48 N. E. 532.

The rule was adopted as a rule of repose with a view to quieting titles. In Sherman v. Kane, 86 N. Y. 57, 73, the court said:

"The doctrine as to the practical location of a boundary line is well settled in the courts. It was adopted as a rule of repose with a view of quieting ti-

tles, and rests upon the same ground as the statute in reference to adverse possession which has continued for a period of 20 years. * * * It applies, not only to cases of disputed boundary, but to those about which there can be no real question."

Upon the case made by the proofs, the plaintiff was entitled to a judgment in his favor. The trial was had before the court, a jury having been dispensed with, and it is quite evident that all the available evidence was produced. We may therefore proceed to render final judgment.

The judgment appealed from will be reversed, and a judgment granted in favor of plaintiff in accordance with the prayer of the complaint, with costs to appellant in this court and in the court below. The sixth finding of fact is reversed in so far as it finds that the possession of the disputed strip by plaintiff and his brother, after the erection of the division fence in 1891, was not adverse possession by said plaintiff and was not hostile to defendant or her predecessor in title. The seventh, eighth, ninth, tenth, and eleventh findings of fact are reversed, as well as all of the conclusions of law found at the request of defendant. The findings of fact requested by plaintiff and refused by the court and numbered twelfth, fifteenth, and sixteenth are found, as well as the conclusions of law also requested by the plaintiff and numbered 1 and 2. Settle order on notice. All concur.

