## ABRAHAM S. DAY *v.* RANSELL WILDER.

### *Deed. Adverse Possession. Evidence.*

A deed of a house lot described the land as beginning at a point in the center of a highway; thence northerly, &c., eleven rods, *to a corner*, &c.; thence easterly, &c., *to a corner;* thence southerly, eleven rods, to the center of the highway; thence westerly, in the center of the highway, to the place of beginning. No fence or other monument ever marked the northern termini of said eleven-rod lines; but a fence crossed the northerly end of said lot, south of said termini, placed there for convenience in building, and not designed or understood as being on the true north line of said lot. Other house lots adjoined the lot in question on the east and west; but it did not appear that the northerly corners thereof ever had, or were intended to have, any reference to the corners of the lot in question; nor did it appear whence title thereto was derived. The court refused to charge, that by intendment of law, the adjoining corners of said lots were to be taken as the northern corners of the lot in question; but charged that unless there was some object or mark in the course of said eleven-rod lines, intended by the parties to said deed to mark the northern

termini thereof, that said deed required said lines to be eleven rods long from the center of the highway; and properly explained the law as to monuments controling courses and distances. *Held,* no error.

Actual possession by prior occupants claiming title, although having no color of title, will avail a subsequent occupant under color of title, claiming under such prior occupants, in making out a possessory title in himself.

L., while living with his wife, and in possession of her land by virtue of his marital rights, and whose possession of the demanded premises the plaintiff claimed the benefit of in making out a possessory title thereto in himself, said to a neighbor that if M., an adjoining proprietor under whom the defendant claimed said premises, had a mind to terrace them, he would have a good place to raise tomatoes. *Held,* that said declaration was admissible against the plaintiff, to characterize L's possession, and as having a tendency to show a recognition by L. of M's right thus to appropriate the land to his own use, and to the same extent, to show that L's possession thereof was not under a claim of right.

Ejectment for land in Ludlow. Writ dated November 15, 1871. Eviction laid April 1, 1871. Plea, the general issue, and disclaimer of the principal part of land described in the declaration. Trial by jury, May term, 1873, Barrett J., presiding. The controversy was as to a small piece of land about eight rods and twenty-two links long east and west, one rod wide at the east end, and three rods wide at the west end, lying along and adjoining the north end of defendant's house lot as theretofore occupied by him. It was conceded that at an early day one Nathan P. Fletcher was the owner of the land described in the declaration, and also of the defendant's house lot, and that both parties claimed title to the land under said Fletcher. It appeared by deeds that said Fletcher, on July 11, 1835, conveyed all of said lands by deed to Asa and R. F. Fletcher; that said Asa and R. F. Fletcher, on December 30, 1835, conveyed said house lot to one Holmes Hammond; that the same is now owned by the defendant, and as a part of which the defendant now claims the land in controversy. Said last-named deed described the land thereby conveyed, as follows:

" Beginning in the center of the Green Mountain turnpike, on the east line of Wm. B. Wetherbee's land; thence northerly, on the said Wetherbee's east line, and in the same direction, eleven rods, to a corner on the side of the hill; thence easterly, parallel with the turnpike, eight rods and twenty-two links, to a corner; thence south, parallel with the line first mentioned, eleven rods, to the center of said turnpike; thence westerly, in the center of

said turnpike, eight rods and twenty-two links, to the place of beginning; being a part of what is called the Stevens lot."

It further appeared, that said Asa Fletcher afterwards became the owner of said R. F. Fletcher's interest in said land, and that on March 30, 1848, he deeded the plaintiff's land, with some other, to his three grand children, Harriet L. Lord, Edgar N. Lord, and Emily Lord, in which deed there was a reservation or exception in the following words: " Excepting and reserving to my oldest daughter, Lorinda A. Lord, the use and occupancy, rents and profits, and entire possession of said premises during her natural life ;" that the said Harriet E., Edgar N., and Emily, on May 2, 1861, deeded to the plaintiff that part of the premises which he now claims ; and there was no question but the land in controversy was covered by said deed. May 26, 1861, the said Lorinda A. Lord quit-claimed said land to the plaintiff, her husband, Royal T. Lord, having deceased July 11, 1860. Plaintiff claimed that the possession of said Royal under the right of his wife, inured to his benefit, in making title in him by fifteen years possession. It did not appear that said Lorinda had, or ever claimed to have, any other title to said premises except said reservation.

The plaintiff gave evidence tending to prove, that a fence had been standing on the line to which he claimed, and the one now in controversy, forty-five years or more, and on the line of occupancy between the land of the plaintiff and the defendant's said house lot, and had always been kept up and supported by the parties and those under whom they claimed.

The defendant gave evidence to show where the northerly line of the house lots lying east and west of his lot, met the easterly and westerly lines of his lot ; that no fence or marked corners had ever been known to exist where the defendant claimed the line to be, and that the disputed land had been occupied in connection with the plaintiff's land, which had been used for a pasture, for more than forty-five years before the eviction. The plaintiff claimed that the occupancy of said Lord down to said fence, was under a claim of ownership and right. The defendant gave in

evidence his deed of said house lot, wherein the description was substantially like the description in said deed from the Fletchers to Hammond. He also gave in evidence the chain of deeds from Nathaniel P. Fletcher down to himself, which contained substantially the same description. He also gave evidence tending to show that by the measures in his deed, said house lot contained the land in dispute ; also, to meet said claim of plaintiff as to Lord's occupancy, he offered to prove that said Royal T. Lord, in his lifetime, and while in possession with his wife, of said land (the plaintiff's pasture), said to a neighbor, that if Wm. K. Manning, who then owned defendant's house lot, had a mind to terrace the land in dispute, he would have a good place to raise tomatoes. To the admission of this testimony the plaintiff objected ; but the same was admitted by the court for the purpose above named ; to which the plaintiff excepted. It was used in the trial and treated in the charge only with reference to that purpose. The defendant gave in evidence the deposition of said Manning, to whom said Hammond conveyed the defendant's lot on February 16, 1838, and of whom the defendant purchased on June 14, 1864. He testified among other things, that when he owned the lot, the fence was not on the north line ; that it was not built on the north line on account of a steep bluff there ; that the said Royal T. Lord occupied the plaintiff's land then, and that he never claimed that the fence was on the line, and that witness always understood his north line ran along against the bluff ; and that his north-west corner was a few rods north of the fence ; that witness built the fence, and kept it in repair, and that he and Lord never had any talk about whether it was on the line or not.

The plaintiff requested the court to charge the jury,

1st. "That if the plaintiff and those under whom he claimed, had been in the quiet and peaceable possession of the premises in dispute for more than fifteen years next before the bringing of this suit, claiming to own them, the plaintiff could hold said premises. And the court so charged.

2d. " That inasmuch as there was no evidence that any corners ever existed at the northerly corners of the defendant's house lot as he claimed it, other than the adjoining corners of the house lots next easterly and westerly of the defendant's, then, by legal

intendment, these would be the corners of defendant's house lot as described in his deed."

The court refused to charge as requested by the second request; but charged, that if said fence was made as a mere accommodation fence, and not designed or understood by the parties as being on and marking the true line between them, and it so continued down to the time the plaintiff acquired his title, then it would not constitute a mark or monument showing the true line described in the deed under which the defendant derived his title; that unless there was some object or mark in the course of said eleven-rod lines named in said deed of Fletchers to Hammond, intended by the parties to said deed to mark the northern termini of said lines, the call of the deed would require those lines to be eleven rods long from the middle of the highway, as named in said deed; explaining in a satisfactory manner the law as to courses and distances being controlled by monuments. In all other respects the charge was full and satisfactory. Verdict for the defendant.

To the admission of the testimony objected to, to the refusal to charge as requested, and to the charge so far as it was contrary to and did not comply with plaintiff's second request, the plaintiff excepted.

*Sewall Fullam*, for the plaintiff.

The interest of Mrs. Lord in the premises in controversy, was nothing, or, at most, a tenancy by sufferance. Her father, Asa Fletcher, reserved a right in her of the use and occupancy, rents and profits, and entire possession of the premises during her natural life. This the father never conveyed to the daughter. The first question that arises in the case is, whether the admissions of the husband, as stated, were admissable. We insist they were not. He had no interest in the land. The law will protect the interest of the wife, and he cannot defeat it. He cannot defeat the title of the reversioner. The tenant can do nothing to defeat the landlord's title.

The only ground upon which the admissions of the tenant have ever been admitted in evidence is, that they were made while he

was in possession, to show the extent of his possession. The admission, as given, does not tend to prove any right to the land in Manning. "If Manning has a mind to terrace the land, he can have a good place to raise tomatoes," is as much evidence that he would give him liberty to do so, or would not object to his doing so, as of anything else.

The plaintiff gave in evidence ample testimony to show title in himself, and forty-five years' possession and occupancy claiming title thereto. The exceptions do not show that the line fence supported by the parties, was an "accommodation fence ;" therefore, it was error for the court to set the jury to guessing whether it was such fence or not. There was error in the other part of the charge in relation to the corners and length of the lines. The length of the lines is the only ground upon which defendant bases his claim ; and this, after a practical occupation and acquiescence of over forty-five years.

*Walker & Goddard*, for the defendant.

In this case the plaintiff claims title to the premises by adverse possession. To make out the time, it became necessary to include a part of the time while the land was claimed to be in possession of a married woman and her husband, together with other land adjoining the same. The land was clearly not the wife's nor her remainderman's property, unless obtained by means of adverse possession, and some portion of which possession was while the wife was under coverture. It is a well-settled rule of law, that such possession is exclusively the possession of the husband. *Holton* v. *Whitney*, 28 Vt. 448.

It therefore follows, that, if both Lord and wife were in possession of the premises during the coverture, the possession was, in law, exclusively Lord's ; and whether this possession of the land in dispute was adverse or not, depended on his intention to claim, mere possession alone not being sufficient. Angel Lim. 476, 577 ; *Crowell* v. *Bebee*, 10 Vt. 33. The same principle applies if Lord was in possession under his own right or claim, without regard to his wife. Whenever a party attempts to make title to land by means of the adverse possession of a deceased person con-

trolling the possession, the declarations of such deceased person while in possession, are always admissible in evidence, to show the character of his possession. 1 Greenl. Ev. §§ 109, 147 ; *Carpenter* v. *Hollister et al.* 13 Vt. 552, 556 ; *Wood et al.* v. *Willard et al.* 37 Vt. 377.

Any declaration of Lord while in possession during coverture of the wife, going to show the character of his possession, was proper evidence for the jury. *Beecher* v. *Parmalee et als.* 9 Vt. 352 ; 1 Greenl. Ev. § 109 ; *Holton* v. *Whitney, supra.* Therefore, the testimony offered as to the declaration of R. T. Lord while in possession of the disputed land under the right of the wife, tending to show the character of his possession, was properly admitted in evidence ; and more especially so, for the reason that the plaintiff claimed the possession of Lord to have been adverse, and counted the period of his possession as a part of the fifteen years necessary to make his title.

The plaintiff's first request was fully answered by the charge. The second request was answered as far as the evidence offered, warranted ; a further compliance would have been error. It was a question of fact for the jury to determine from the evidence, what and where the northerly corners of the defendant's land were, with the proper instructions given by the court as to distances and courses being controlled by monuments. With the record evidence and the deposition of Manning, tending to show that the true northerly corners of defendant's land were where the defendant claimed them to be, it would have been error for the court to have instructed the jury as requested. As the deed to Hammond did not in terms call for the corners of the adjoining house lots, easterly and westerly, as monuments or marks for the northerly corners of defendant's land, there certainly is no "legal intendment" that these would be the northerly corners of defendant's land ; but, on the contrary, the courses and distances of the deed would govern, unless there was some mark or object in said east and west lines, short of the eleven rods, intended by the parties as the northerly termini of said lines ; and the court so properly instructed the jury. 2 Wash. Real Prop. 673, 674 ; *Gilman* v. *Smith*, 12 Vt. 150. Whenever a boundary line is de-

scribed by admeasurement, the distance will govern, if there are no known monuments or marks given to limit or test the measurement. 2 Wash. Real Prop. 674; *Baney* v. *Rice*, 20 Pick. 62; *Chadbourne* v. *Mason*, 48 Me. 391; *Crowell* v. *Bebee, supra.*

The opinion of the court was delivered by

Peck, J.   The dispute is between two adjoining proprietors as to the dividing line between them, involving the title to a strip of land about eight rods and twenty-two links long east and west, and one rod wide at the east end, and three rods wide at the west end, lying along the north end of the defendant's house lot, and claimed by the defendant as part of it, and as embraced in the deeds in his chain of title down from Nathan P. Fletcher, under whom both parties claim title to this strip; the defendant having filed a disclaimer as to the residue of the land described in the declaration.   The deed of Nathan P. Fletcher, dated July 11, 1835, conveyed the entire tract, embracing both the plaintiff's and the defendant's land, to Asa Fletcher and R. F. Fletcher; and Asa and R. F. Fletcher, December 30, 1835, carved out of said tract of land, the defendant's house lot, by a deed to Holmes Hammond, a copy of which is referred to for description.   The defendant's title is by a chain of deeds from Holmes Hammond down to himself, by substantially the same description as in the deed to Hammond from Asa and R. F. Fletcher.   After the date of the deed to Hammond, Asa Fletcher, having become the owner of R. F. Fletcher's interest in the said land not conveyed by the deed to Hammond, deeds, March 30, 1848, to his three grandchildren, Harriet L. Lord, Edgar N. Lord, and Emily Lord, excepting and reserving to his oldest daughter, Lorinda A. Lord, the use and occupancy, rents and profits, and entire possession of said premises, during her natural life.   This deed is referred to in the exceptions, but it has not been furnished to the court.   It seems, however, to be conceded, that the description in this deed does not include the strip in dispute if it is included in the previous deed to Hammond; and that if the deed to Hammond does not include it, then it is embraced in this deed to said grand-children.   But whether the disputed land is embraced in this last-

named deed or not, as the plaintiff claims under the grantees in this deed, the defendant has the elder title from the common source, and has the paper title to the disputed land, if it is embraced in the deed from Asa and R. F. Fletcher to Hammond. No question is made but that this deed embraces the disputed land, if the length of the lines—the eleven rods—on the east and west sides of the land conveyed, called for in the deed, is to govern. There is no error in the charge of the court, in which the court tell the jury, that unless there was some object or mark in the course of said eleven-rod lines named in this deed, intended by the parties to the deed to mark the northern limit of these lines, the call of the deed would require those lines to be eleven rods long from the middle of the highway, as named in the deed; explaining the law in a satisfactory manner as to courses and distances being controlled by monuments. This charge is in accordance with the law on this subject, and was also warranted by the evidence in the case. There was no conclusive proof, if any, of monuments to control the distance named in the description. The case shows no foundation laid by the evidence for a charge according to the defendant's second request, to the effect that as there was no evidence that any corners ever existed at the northerly corners of the defendant's house lot as he claimed it, other than the adjoining corners of the house lots next easterly and westerly of the defendant's, then by legal intendment these would be the corners of the defendant's house lot as described in his deed. There is nothing in the case to show that in any surveys, or in any of the conveyances, the northerly corners of the defendant's lot and the northerly corners of the adjoining lots ever had, or were ever intended by any of the proprietors to have, any connection with, or reference to, each other, or that they were ever so regarded. Nor does it appear from what source the title to the adjoining lots was derived, nor under what description; but if derived from the same source as these parties derived their title, as counsel seem to consider in argument, it does not appear whether granted by Fletcher before or after the deed of defendant's lot to Hammond. It would have been manifest error for the court to have complied with this request, making the corners of

the adjoining lots the corners of the defendant's lot *by legal intendment.*

Objection is made to the charge of the court in which the jury were told that if the fence was made as a mere accommodation fence, and not designed or understood by the parties as being on and marking the true line between them, and it so continued down to the time the plaintiff acquired his title, then it would not constitute a mark or monument *showing the true line described in the deed under which the defendant has derived his title.* The only objection urged by counsel to this part of charge is, that there was no evidence tending to show that such was the character or purpose of the fence as is alluded to in the charge. But a reference to the deposition of Wm. K. Manning, who owned the defendant's lot in question under his deed from Holmes Hammond, and who occupied it while Royal T. Lord with his wife Lorinda A., occupied the land now owned by the plaintiff, shows that there · was evidence to be submitted to the jury in connection with the other evidence in the case, sufficient to obviate this objection to the charge. Therefore the jury, under a proper charge based upon sufficient evidence, have found that the disputed land was included in the deed from Fletchers to Hammond, and that the record title is in the defendant.

The plaintiff also claimed to have acquired title to the land in dispute by adverse possession of himself and those under whom he claimed, subsequent to the date of the deed to Hammond in the defendant's chain of title. None of the deeds in the plaintiff's chain of title from the common source, Asa and R. F. Fletcher, embraced the land in dispute except the deed of Harriet E., Edgar N., and Emily Lord to the plaintiff, dated May 2, 1861, which does embrace it ; so that none of the occupants of the plaintiff's land whose possession can avail the plaintiff in giving him a possessory title, occupied the disputed land under color of title, prior to this deed to the plaintiff, as the jury have found that it was embraced in the deed to Hammond. But still, *actual occupancy of the disputed strip, under a claim of title,* by such prior occupants, would avail the plaintiff in making out a possessory title in himself. The plaintiff had the full benefit of this in the

charge of the court, which on this branch of the case, was according to the request of the plaintiff's counsel.

It is insisted that the declaration of Royal T. Lord while in possession in the right of his wife under the aforesaid reservation, made while William K. Manning owned and occupied the defendant's house lot, that if Wm. K. Manning had a mind to terrace the land—referring to the land now in dispute—he would have a good place to raise tomatoes, was improperly admitted in evidence. It is claimed that it is too equivocal and uncertain in its meaning, to justify its introduction as evidence. But we think it has some tendency to show a recognition on the part of Lord of the right of Manning thus to appropriate the land to his own use, and consequently to the same extent to show that his, Lord's, possession of it was not under a claim of right. It is claimed also that as Royal T. Lord's possession was in right of his wife, his declaration while thus in possession, living with his wife, was not evidence to affect that possession to the prejudice of the plaintiff. It is not very material what title or right, if any, Lord's wife acquired under that reservation, as no question is made but that Lord's possession was in right of his wife, and in the chain of the plaintiff's title. It is true that Lord being in possession in right of his wife, if he claimed her boundary to be at a line outside of the true line, and actually occupied accordingly to the line thus claimed, such possession would be subservient to her title, and would inure to her benefit in the acquisition of a possessory title to the extent of such possession. But this does not show that the statement of Lord was inadmissible for the purpose it was admitted and used. The possession was also his possession in a qualified sense, and would inure to his benefit to the extent of his right to occupy his wife's land. The plaintiff claimed on trial that the possession of R. T. Lord under the said right of his wife, inured to the plaintiff's benefit toward making title in the plaintiff by fifteen years' possession. This possession being relied on by plaintiff to make a possessory title in himself, he must take it with its infirmities if any it has. If it was not under a claim of right so as to be adverse, it is not available to the plaintiff. The state-

ments of Lord made during the period of such possession, tending to show his possession of the land in dispute was not adverse, or under a claim of right or title, are competent evidence to show the character of the possession in this respect. The declaration in question having been made by R. T. Lord while he was in possession, indicating his intention respecting such possession, is evidence against a party claiming a possessory title by means of that possession, so far as it tends to give character to that possession. Possession being in its nature continuous, such declaration is regarded as a declaration accompanying the act, and giving character to it as part of the *res gestæ.* This is not admitting the husband to make declarations to defeat the title of the wife then already existing, but only to qualify and give character to a cotemporaneous act of the husband on which the wife relies to acquire title. This was the purpose for which the declaration in question was admitted, and the extent to which it was used; and in this there was no error, although the plaintiff claims under his deed from Harriet E., Edgar N., and Emily Lord, as well as under his deed from the wife of Royal T. Lord.

Judgment affirmed.