JOHN M. RISHER, APPELLANT, v. NELS C. MADSEN, APPELLEE.

FILED JUNE 16, 1913. No. 17,106.

1. **Evidence:** SECONDARY EVIDENCE. A witness who testifies positively that she received a letter from the defendant in due course of mail, that she knows who signed the letter and it was signed by defendant, and that the letter has been lost, that she has made careful search and is not able to find it, should be allowed to testify to its contents as far as material to the issue being tried. It will not be presumed that she has not had opportunity to know defendant's signature or other facts positively testified to by her, in the absence of cross-examination as to such opportunities.

2. **Adverse Possession:** REBUTTAL EVIDENCE. In an action of ejectment, when the defense is adverse possession and the statute of limitations, it is competent to prove in rebuttal that the defendant after the alleged running of the statute of limitations, being asked by the plaintiff why he was using the land, stated that the land was unoccupied, and made no claim of right as against the plaintiff.

3. ———: TOLLING THE STATUTE. In such action an attempt on the part of the defendant to lease the land from the plaintiff during the alleged running of the statute of limitations will toll the statute.

4. **Ejectment:** GENERAL DENIAL: EVIDENCE: SUBSEQUENTLY ACQUIRED TITLE. Evidence that the defendant in ejectment has purchased an outstanding tax title based upon a sale for taxes while the action is pending cannot be received under a general denial. If such issue is tendered upon a supplemental answer the plaintiff will be allowed to join issue thereon.

5. **Adverse Possession:** QUESTION FOR JURY. Possession upon which to

base a title under the statute of limitations must be adverse to all the world, including the plaintiff who holds the legal title. If the holder of the legal title is a nonresident and pays all taxes on the land regularly and has no actual notice that the land is claimed by any one adversely to his title, and a trespasser, without any color of title, cuts wild grass and otherwise uses uninclosed lands and excludes other trespassers to enable him to do so, it presents a question for the jury to determine whether he has held such possession as is adverse to the rights of the true owner.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*Leavitt & Hotz* and *H. M. Buddha,* for appellant.

*James P. English* and *Will H. Thompson,* contra.

SEDGWICK, J.

The plaintiff brought this action in ejectment in the district court for Douglas county to recover the possession of five lots in block 74, in Benson, an addition to the city of Omaha. The answer was a general denial. The trial resulted in a verdict and judgment for the defendant, and the plaintiff has appealed.

It appears from the evidence that in 1893 block 74 and various other adjoining blocks in that addition were wild, uncultivated lands. Several dairymen and others were in the habit of keeping their herds in that neighborhood and pasturing them where they could on unoccupied lands. Some tracts of land appear to have been rented by various stock owners, and others were used without any authority from the owners. One Hanson had a herd of cows, and had a lease of some lands adjoining or in the vicinity of block 74, and had erected a fence along one side of block 74, and had apparently been grazing his cattle on the land that is now in dispute. In 1893 this defendant and one Jacobson in partnership bought out the interest of Hanson in his dairy and apparently in his leases, including the fences which Hanson had erected adjacent to block 74. They be-

gan at once to use all of block 74, cutting the grass, making hay in the summer, and pasturing the cows on the grass after the hay had been removed. The block was good hay ground, except about an acre which they plowed and put in millet. After about two years the defendant bought out Mr. Jacobson's interest in the business, and continued as before, including the use of block 74. From their first occupancy of this land in 1893 for a little more than 10 years they continually claimed the right to use this land. They excluded other dairymen and herders therefrom and prevented people from driving indiscriminately over it. Fannie B. Risher purchased this land in June, 1893, and received a warranty deed therefor, and in March, 1905, she, then being a member of the plaintiff's family, conveyed the land to this plaintiff. The plaintiff put in evidence conveyances apparently showing his chain of title direct from the government. His legal title so obtained is not controverted in the record. The plaintiff and his immediate grantor paid the taxes upon the land. They allowed the land to be sold for taxes in 1900, but afterwards, in 1902, redeemed it. After defendant excluded plaintiff from the land in 1905, the plaintiff paid no taxes; in 1908 the land appears to have been sold for taxes of 1906, and in January, 1910, the county treasurer executed a treasurer's tax deed conveying the land to one Francis I. Thomas, and thereupon Francis I. Thomas and Dexter Thomas executed a quitclaim deed of the lands in question to this defendant.

The defendant claims the land by adverse possession. He made no attempt to establish any other claim or right at the time of the commencement of this action. There is no doubt that he used the land during the 10 years that he claims to have used it, and there is no doubt that he excluded the public generally from the land. The real issue between the parties was whether he held this land adversely to the plaintiff. One witness testified positively that in 1893, about the time the defendant began using the land, the defendant told him that he had rented the

land and had a right to use it. The defendant positively denies this. Edwin Garvin, a real estate agent of Omaha, testified that he represented the owners of this property, and early in 1905, as agent of the plaintiff, he had a conversation with the defendant in which he asked the defendant what he was doing on the land, and what right he had there, and that the defendant answered: "Nobody was using it and he had been cutting grass; he didn't claim to own the land." Afterwards, the witness served a notice on the defendant for possession. The defendant then said that he had possession and was going to hold it. The defendant testified in regard to this conversation, and appears to intend to contradict the evidence of Mr. Garvin, although the defendant's testimony is not very explicit.

Mrs. Risher testified that in 1901 she received a letter from the defendant; that it came by mail in the usual way; that she had made diligent search for the letter and was unable to find it; that she knew by whom it was signed, and that the defendant's signature appeared on the letter; and that she was able to state the contents of the letter. This she was asked to do, but, upon objection, her evidence was excluded. This evidence was apparently excluded upon the ground that Mrs. Risher was not in position to know the signature of the defendant, but she testified positively that she did know his signature, and there was no attempt to cross-examine her as to her means of knowledge, and in the absence of such cross-examination we think the evidence should have been admitted.

If it is true that in 1901 the defendant attempted to lease the land from the plaintiff or his grantor without making any claim to hold it adversely against the plaintiff, or if it is true that when Mr. Garvin, the plaintiff's agent, first approached him in 1905 and asked him in regard to his claim the defendant made no claim to hold it adversely to the plaintiff's interest, he could not claim title by adverse possession against the plaintiff.

We think also the court erred in receiving in evidence

the treasurer's tax deed and the deed from Thomas to the defendant. This action was begun in 1906. This deed, therefore, and the sale upon which the tax deed was issued all occurred while this action was pending. In an action of ejectment the defendant under general denial can make any defense that he has, but it must be a defense to the plaintiff's right of possession as it existed at the time that the action was begun. If the defendant had obtained rights in the property, or had secured substantial equities after the action was begun, it seems probable that under our liberal code practice he might be allowed to present such subsequently acquired rights for adjudication by supplemental pleadings, but he ought not to be allowed to do so under a plea of general denial of the plaintiff's right of possession without supplemental pleadings. *Duggan v. McCullough,* 27 Colo. 43, 59 Pac. 743. If the defendant tendered such issue by supplemental pleadings, the plaintiff would of course be allowed to join issue thereon, and such issue, if equitable in its nature, would be determined by the court. The court by instructions attempted to withdraw from the jury all consideration of this tax purchase and deed as affecting the right of possession. If the tax deed had been brought into the case by proper pleading and proof, the trial court would be required to determine the legal questions arising as to its validity, and the right of possession thereunder. Its reception in the condition that the issues then were and its subsequent rejection tended to confuse, and perhaps to mislead, the jury.

The plaintiff and his grantor, who held the legal title to this land during the 10 years that the defendant is now claiming that he held it adversely, were residents of another state, and the evidence shows that they paid the taxes on the land in good faith and had no actual notice of any adverse claims of ownership whatever. Did the defendant hold this land adversely to their title and possession? Did he have such possession and use of the land as would in law afford the rightful owners constructive

notice that he was holding it adversely to their right? He admits that he had no right to the land whatever when he commenced using it. He made no inquiry as to the true owners, but he says he claimed the land from the start. If this claim was merely as against other trespassers, and an attempt of himself and other cattlemen to apportion these unoccupied lands among themselves, and use in herding and appropriating the wild grass without any act or claim adverse to the owners of the title, this would not necessarily constitute such adverse possession against the true owners as would ripen into complete title. If the jury found from the evidence that within 10 years before the commencement of this action the defendant recognized the plaintiff's right by attempting to lease it from the plaintiff or his grantor, or that, when the plaintiff by his agent inquired of the defendant what right he claimed in the land, he failed to assert any right in the land itself as against the plaintiff, the verdict should have been for the plaintiff. There was no doubt under the evidence that the defendant's use of the land was adverse as to the other cattlemen who were using other tracts of land in that neighborhood in the same manner, and if this question had been presented to the jury they might have found that this was the extent of the defendant's claim of adverse possession. The real issue was not defined and plainly submitted to the jury in the instructions.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

LETTON, ROSE and HAMER, JJ., not sitting.