FRANK W. SMITH *v.* VERMONT MARBLE COMPANY.

May Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 5, 1926.

*Boundaries—Estoppels—Recitals in Deed Not Available as Estoppels by Stranger Thereto—Recitals in Deed as Admissions—Determination of Effect of Admissions as Question of Law or Fact—Declarations of Party in Possession Against Interest Admissible Against Grantees—Adverse Possession—Hostility as Essential—Acknowledgment of Owner's Title by One in Possession Interrupts Running of Statute—Tacking on Prior Possessions Accompanied by Their Infirmities—Necessity of Beginning De Novo Where Running of Statute Interrupted—Character of Title Acquired by Adverse Possession—Not Divested by Verbal Transfer or Declaration—Recognition of Title in Another— Adverse Possession Mixed Question of Law and Fact—Conclusiveness of Findings of Referee—Effect Must Be Given to Findings Requiring Inevitable Legal Consequences— Supreme Court May Disregard Unwarranted Inferences of Referee from Facts Found—Recitals in Deeds Constituting Chain of Title.*

1.   When land conveyed is described as bounded by land of another, it means the true line that divides them, and not line of occupation.

2.   Estoppels are and must be mutual, and they operate only upon and in favor of parties and their privies.

3.   In action of ejectment, plaintiff's claim that defendant was estopped to assert adverse possession because of recitals, contained in each deed in defendant's chain of title prior to its own, that plaintiff was owner of land in question, *held* unavailing, as plaintiff was stranger to such deeds, and not being estopped thereby himself, could have no benefit therefrom by way of estoppel.

NOTE:—When this case was first argued, it fell to Butler, J.   On reargument, it was assigned to Powers, J.

4. Party cannot avail himself of recitals in deeds subsequent to his own as estoppels, but they are solemn admissions of grantors therein and are to be given effect as such.

5. Ordinarily, effect of an admission on question involved is for determination of trier of facts.

6. Undisputed and unexplained admissions may be of such character as to be conclusive upon party making them and his privies.

7. Declarations and admissions of party in possession, limiting or qualifying its character or extent, are admissible against his grantees, and have same effect upon them as upon maker.

8. An essential of adverse possession is that it must have been hostile from beginning and continuously through statutory period.

9. Express acknowledgment, by person in possession, of true owner's title, interrupts running of statute, and is binding upon grantees of person making it.

10. One who requires a prior possession to tack to his own, in order to make out full 15 years of adverse possession, takes that prior possession with such infirmities as attach to it.

11. Where running of statute is interrupted, possession of true owner intervenes, previous hostile possession goes for naught, and claimant under adverse possession must begin *de novo.*

12. Where title by adverse possession has once been acquired, it is as full and complete as any other title, and cannot be divested by any verbal transfer or declaration.

13. Recognition of another's title to land so as to interrupt adverse possession may be made by acts as well as words.

14. Acknowledgment of owner's title by one in adverse possession to interrupt such possession need not be made to owner, but is as effective if made to a third person.

15. Adverse possession is usually mixed question of law and fact, whether essential facts exist being for jury, and whether facts found constitute adverse possession being for court.

16. While findings of referee are made conclusive by G. L. 2078, findings which are mere legal conclusions are without force.

17. Whenever referee's report shows outstanding fact so vital as to make its legal consequences inevitable, court must give it effect without regard to other findings.

18. When referee fully reports facts and draws therefrom an unwarranted inference, Supreme Court will disregard such inference and render such judgment as facts require.

19. In action of ejectment, recitals in each deed in defendant's chain

of title, prior to its own, that plaintiff owned land bounding
defendant's property on north, where land in dispute was
located, *held* to constitute unmistakable recognition of plain-
tiff's ownership of land in question by defendant's grantors,
and to be conclusive evidence that no adverse title had become
established, thus precluding defendant from deriving any
benefit from prior possession in aid of his own, recitals in
each deed tolling statute and making new entry necessary,
and last of recognitions having been within 15 years defend-
ant's adverse possession could not be established.

ACTION OF EJECTMENT. Pleas, general issue and title by
adverse possession. Heard on referee's report by the court at
the March Term, 1922, Rutland County, *Moulton,* J., presiding.
Judgment for recovery of part, only, of premises. The plaintiff
excepted. The opinion states the case. *Reversed and judgment
for plaintiff to recover seizen and possession of premises in ques-
tion.*

*Charles H. Darling* and *E. C. Mower* for the plaintiff.

Examination of property by strangers for purpose of de-
termining its value, standing alone, is an act of trespass rather
than possession. *Laraway* v. *Bragg,* 65 Vt. 673, 683; *Wells* v.
*Austin,* 59 Vt. 165.

Record of a survey is evidence neither of title nor posses-
sion. *Oatman* v. *Fowler,* 43 Vt. 462; *Kidder* v. *Kennedy,* 43 Vt.
717, 728; *Paine* v. *Hutchins,* 49 Vt. 314; *Atkinson* v. *Patterson,*
46 Vt. 47; *Rice* v. *Chase,* 74 Vt. 367; *Webster* v. *Barker Lumber
Co.* (Me.), 116 Atl. 586.

Payment of taxes is not an act of possession, and, circum-
stances under which land was set to defendant not appearing,
does not even show claim of title. *Langdon* v. *Templeton,* 66
Vt. 173, 178; *Tillotson* v. *Pritchard,* 60 Vt. 94; *Prince & Slocum*
v. *Hutchins,* 49 Vt. 314, 317.

The referee being unable to find circumstances under which
fence was built, but having found occupancy or possession of lot
as claimed by plaintiff in his declaration, which was true line,
fence did not give color to possession. *Blondin* v. *Brooks,* 83 Vt.
472, 477; *Soule* v. *Barlow,* 48 Vt. 132, 49 Vt. 329, 339; *Webber
et al.* v. *Barker Lumber Co. et al.* (Me.), 116 Atl. 586; *Reed* v.

*Field,* 15 Vt. 672; *Tillotson* v. *Pritchard,* 60 Vt. 94; *Langdon* v. *Templeton,* 66 Vt. 173; *Morse* v. *Churchill,* 41 Vt. 649.

Case having been referred, court had no authority to find facts independent of referee and of facts reported.   *Fuller* v. *Adams,* 44 Vt. 543; *Vilas National Bank* v. *Strait,* 58 Vt. 448; *Darby* v. *Bank,* 57 Vt. 370.

Facts reported by referee warrant a finding over findings of court and referee.   *Spaulding* v. *Mutual Life,* 94 Vt. 42, 55; *Briggs* v. *Briggs,* 46 Vt. 571; *Needham* v. *Holt,* 54 Vt. 326; *Johnson* v. *Porter,* 63 Vt. 653; *Davenport* v. *Newton,* 70 Vt. 11; *Child* v. *Kingsbury,* 46 Vt. 47; *Trask* v. *Kerrick,* 94 Vt. 70; *Adams* v. *Nichols,* 1 Aik. 316; *Skelley* v. *Skelley,* 88 Vt. 254.

Grantees of deeds in a chain of title are estopped by recitals therein equally with grantors.   *Blake* v. *Tucker,* 12 Vt. 39; *Bronson* v. *Wirth,* 17 Wall. 32, 41; *Porterfield, Exrs.* v. *Clark,* 2 How. 76, 109; *Van Rensselaer* v. *Kearney,* 11 How. 297, 325; *French* v. *Spencer,* 21 How. 228, 240; *Bush* v. *Cooper's Admr.,* 18 How. 83, 85; *Orthwein* v. *Thomas,* 127 Ill. 554, 21 N. E. 430, 11 A. S. R. 159; *Chloupek* v. *Perotka,* 89 Wis. 551, 46 A. S. R. 858; *Marshall* v. *Haney,* 59 A. D. 92; *Midland Railroad Co.* v. *Fisher,* 24 N. E. 756; *Cobb* v. *Oldfield,* 38 N. E. 142; *Atlantic Dock Co.* v. *Leavitt,* 54 N. Y. 35, 40, 13 A. R. 556; *Doe d. Potts* v. *Dowdall* (Ohio), 11 A. R. 757; *Stowe* v. *Wyse,* 7 Conn. 214, 18 A. D. 99; *Green & Blake* v. *Clark,* 13 Vt. 158; *Finley* v. *Simpson,* 53 A. D. 252; *Davis* v. *Calahan,* 78 Me. 313, 5 Atl. 73; *Hickey* v. *Lake Shore & M. S. Ry. Co.,* 51 Ohio St. 46, 46 A. S. R. 545; *Blood* v. *Crew-Levick Co.,* 35 Atl. 871, 55 A. S. R. 742; *Bliss* v. *Tidrick,* 1912C, Ann. Cas. 671, 674, Col. 1; *Fahey* v. *Marsh,* 49 Mich. 236; *Douglass* v. *Scott,* 5 Ohio, 195; *McChesney* v. *Wainwright,* 5 Ohio, 452; *DiLegge* v. *Peper,* 129 Atl. 292.

*Lawrence, Stafford & Bloomer* for the defendant.

Character of occupation is matter of fact; effect of occupation of nature and character established is matter of law. *Davenport* v. *Newton,* 71 Vt. 11, 16; *Child* v. *Kingsbury,* 46 Vt. 47; *Kidder* v. *Kennedy,* 43 Vt. 717; *Jangraw* v. *Mee,* 75 Vt. 211.

At expiration of statutory period provided by G. L. 1843, not only is action barred, but a title inures in the possessor which is in all respects as perfect as one obtained by grant or deed, and has the same validity and force.   *Weed* v. *Keenan,* 69 Vt. 74, 77;

*Austin* v. *Bailey,* 37 Vt. 219; *Hughes* v. *Graves,* 39 Vt. 359; *Hodges* v. *Eddy,* 41 Vt. 485.

Privity of estate is necessary in order that successive occupancies may be tacked. *Winslow* v. *Newell,* 19 Vt. 164; *Holton* v. *Whitney,* 30 Vt. 405; *Austin* v. *Bailey,* 37 Vt. 219; *Austin* v. *Rutland R. R. Co.,* 45 Vt. 215; *Day* v. *Wilder,* 47 Vt. 583; *Hassam* v. *Lumber Co.,* 82 Vt. 444; *Sawyer* v. *Kendall,* 10 Cush. 241, 244; *Silsby & Co.* v. *Kinsley,* 89 Vt. 263, 95 Atl. 634, 640; *Vt. Marble Co.* v. *Eastman,* 91 Vt. 425, 452, 101 Atl. 151, 162; *Plumer* v. *Brown,* 8 Metc. 578; *Wade* v. *Lindsey,* 6 Metc. 407; *Melvin* v. *Proprietors, etc.,* 5 Metc. 15, 32; *Ward* v. *Bartholomew,* 6 Pick. 409, 415; *Lock* v. *Whitney,* 63 N. H. 597, 3 Atl. 920; *Davock* v. *Nealon,* 58 N. J. Law, 21, 32 Atl. 675; *Colgan* v. *Pellens,* 48 N. J. Law, 27, 2 Atl. 633; *Murray* v. *Pannaci,* 64 N. J. Eq. 147, 53 Atl. 595; *Feniday* v. *Grosvener,* 86 Conn. 698, 86 Atl. 569, 571; *Sheldon* v. *M. C. R. R. Co.,* 161 Mich. 503, 126 N. W. 105, 106.

Without such privity, upon determination of the estate of each disseizor, the seizen of the true owner revives and is revested. *Vt. Marble Co.* v. *Eastman,* 91 Vt. 424, 452, 101 Atl. 151, 162; *Sawyer* v. *Kendall, supra,* at p. 245; *Wishart* v. *McKnight,* 178 Mass. 360.

Where parcel of land is fenced off from other lands as if belonging to parcel of which former occupant held title, and is used as part of it, and not otherwise, and claimed by occupant as property belonging with it, it may fairly be inferred that possession of this parcel is transferred from one occupant to another, together with seizen and possession of lot of which it is claimed to be part. *Wishart* v. *McKnight,* 184 Mass. 283; *Jordan* v. *Riley,* 178 Mass. 524; *Percival* v. *Chase,* 182 Mass. 371, 376; *Beckman* v. *Davidson,* 162 Mass. 347, 350; *Davock* v. *Nealon,* 58 N. J. Law, 21, 32 Atl. 675; *Clithero* v. *Fenner,* 122 Wis. 356, 99 N. W. 1027, 106 A. S. R. 978.

Every reasonable intendment must be made in support of report of referee. *Martin* v. *Wells,* 43 Vt. 428, 433; *Hayden* v. *Johnson,* 26 Vt. 768; *McBride* v. *McNall,* 92 Vt. 326, 327.

Recitals in deed are binding by way of estoppel on parties and privies, but not as to strangers thereto. *Davis* v. *Moyles,* 76 Vt. 33; *Hall* v. *Dewey,* 10 Vt. 593; *Capen's Admr.* v. *Sheldon et al.,* 78 Vt. 39, 46; Delvin on Deeds, § 1279; *Nutwell* v. *Tongue's Lessee,* 22 Md. 419; *McKinney* v. *Lanning* (Ind.), 38

N. E. 601; *Franklin* v. *Dorland* (Cal.), 87 A. D. 111; *Griffin* v. *Richardson*, 33 N. C. 439; *Brittain* v. *Daniels*, 94 N. C. 781; *Manners* v. *Haverhill*, 135 Mass. 162, 170; *Allen* v. *Allen*, 45 Pa. State, 468; *Sunderlin* v. *Strutthers*, 47 Pa. State, 411; *McCullough* v. *Dashiell*, 78 Va. 630; *Simpson* v. *Pearson*, 31 Ind. 1.

POWERS, J.   The action is ejectment for a piece of quarry land in the town of Pittsford.   The defendant's answer contains the general issue and asserts title by adverse possession.   The trial below was before a referee, on whose report judgment was rendered for the recovery of a part, only, of the premises in question.   The plaintiff brings the case here on exceptions.   The case was argued in this Court at the May Term, 1923, and when, at our last May Term, an opinion was handed down which reversed and remanded the case, the defendant filed a motion for reargument.   In due course, this motion was granted, and the case was reargued at the last January Term.   Upon a re-examination of the exceptions we have reached the conclusions herein recorded.

[1]   The land in question lies in the southwest corner of the so-called Griffith Farm, which takes its name from its former owners, D. J. and J. H. Griffith.   Next south of this farm, lies one formerly owned by D. M. and L. F. Burditt and now owned by the defendant, known as the Burditt Farm.   The land in dispute extends easterly along the north line of the Burditt Farm some eight hundred feet, to a point a little beyond the middle of that line.   From that point on to the east line, the remainder of the Griffith Farm borders the Burditt Farm.   The plaintiff once owned both the land in question and the Burditt Farm.   At some time prior to May 16, 1890, he conveyed an undivided fourth of this farm to E. R. Brainerd, and on that day, by warranty deeds, Brainerd conveyed his one-fourth, and the plaintiff his three-fourths, of the Burditt Farm to the Smith & Brainerd Marble Company, a corporation in which they were largely interested.   In both of these deeds to the corporation, the land conveyed was described as being land formerly owned by said Burditts and as "bounded on the north or northerly by land of D. J. and J. H. Griffith and F. W. Smith."   This reference to land owned by the plaintiff obviously and necessarily means the land in question.   When land conveyed is described as bounded by land of another, it must be taken that it is the true line that

divides them, and not the line of occupation. 2 Dev. Deeds, § 1034; *Cornell* v. *Jackson,* 9 Metc. (Mass.), 150; *Green* v. *Horn,* 207 N. Y. 489, 101 N. E. 430; *Cleveland* v. *Flagg,* 4 Cush. (Mass.), 76; *Umbarger* v. *Chaboya,* 49 Cal. 525. Moreover, at that time, the line between these lands was marked by a stone wall, and the plaintiff owned no other land in the vicinity. This wall has since fallen into disuse, but its location is easily traced, and the line it marked is not and never has been in dispute.

On July 13, 1896, the Smith & Brainerd Marble Company, by its warranty deed, conveyed the Burditt Farm to the Florentine Marble Company, a corporation. This deed, which covers other lands, describes this land as being theretofore owned by D. M. and L. F. Burditt, as being the same land conveyed to the grantor on May 16, 1890, by F. W. Smith, refers to that deed and its record, and recites that "Said premises are bounded on the north or northerly by lands of D. J. and J. H. Griffith and F. W. Smith."

On September 1, 1897, the Florentine Marble Company executed to Seneca Haselton a trust deed of the Burditt Farm and other properties. This deed describes the farm as formerly owned by the Burditts, as being the same land conveyed by F. W. Smith to the Smith & Brainerd Marble Company on May 16, 1890, and as being "bounded on the north or northerly by land of D. J. and J. H. Griffith and F. W. Smith."

On August 24, 1899, the Florentine Marble Company quitclaimed to Martha E. Worthy all the property conveyed to Seneca Haselton, trustee, by deed dated September 1, 1897. This deed did not describe the property covered by it, but referred to the Haselton deed and its record for a description.

On January 20, 1900, Martha E. Worthy quitclaimed to the Belden Falls Marble Company, a corporation, all the land she owned in the State of Vermont. In her deed, she describes one of the parcels conveyed as premises formerly owned by the Burditts, as being the same land conveyed by F. W. Smith to the Smith & Brainerd Marble Company on May 16, 1890, and as "bounded on the north or northerly by land of D. J. and J. H. Griffith and F. W. Smith."

On April 1, 1901, the Belden Falls Marble Company executed to Seneca Haselton a trust deed of its property, including the Burditt Farm, which it therein described as premises formerly owned by the Burditts, as being the same property conveyed

by F. W. Smith to the Smith & Brainerd Marble Company on May 16, 1890, and as "bounded on the north or northerly by land of D. J. and J. H. Griffith and F. W. Smith."

On April 9, 1901, the Belden Falls Marble Company, by warranty deed, conveyed to the Rutland-Florence Marble Company, all the property, real and personal, covered by the above mentioned deed of April 1. This deed of April 9 does not enumerate or describe the property conveyed, but refers to the deed of April 1 for such description.

On April 20, 1911, the Rutland-Florence Marble Company, by warranty deed, conveyed to the defendant all its real estate, including the Burditt Farm and the land here in question—the latter being within the boundaries marked out in the deed. The defendant went into possession of the land in question, and has been in adverse possession thereof ever since.

The plaintiff has never conveyed away the land in dispute, holds the record title to it, and owns it unless he has lost his title by adverse possession.

This suit was brought March 5, 1915.

From the foregoing it appears that no single owner has had or can claim possession of the disputed land for the full term of fifteen years; that the defendant is the only person or corporation holding a deed covering this land; that each of the deeds of the Burditt Farm prior to the defendant's, either expressly or by reference, is tied back to the original deed thereof given by F. W. Smith to the Smith & Brainerd Marble Company, wherein there is a deliberate and unmistakable admission that the plaintiff then owned the land in question. The result is that each deed in the defendant's chain of title, prior to its own, contains a solemn recognition of the plaintiff's title to the land involved in this suit.

[2, 3]   What effect has this fact upon the defendant's claim of title by adverse possession? The plaintiff argues that it operates as an estoppel and precludes the defendant from asserting an adverse title. But this cannot be. Estoppels are and must be mutual, and they operate only upon and in favor of the parties and their privies. *Wright* v. *Hazen*, 24 Vt. 143; *Capen's Admr.* v. *Sheldon*, 78 Vt. 39, 61 Atl. 864; *Pond* v. *Pond's Estate*, 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212; *Dunnett* v. *Shields & Conant*, 97 Vt. 419, 123 Atl. 626. True, the grantee in the Smith deed was estopped by the recital therein, and this estoppel

binds not only the Smith & Brainerd Marble Company, but also its grantee and the successive grantees clear along down to the end of time. It runs with the land, so to speak. That is to say, each and every one of these grantees is estopped from denying that the plaintiff owned the land in question on May 16, 1890, the date of the deed. This is so because there is privity of estate between such successive grantees. But the estoppel in the Smith deed carries no further than is stated. Its force is spent when it results as above. So with the next deed; the Florentine Marble Company and all claiming by, through or under it, are, by the recital in its deed, estopped from denying that the plaintiff owned the land in question on July 13, 1896; and this estoppel is available to the Smith & Brainerd Marble Company, the grantor in the deed, and all persons or corporations claiming by, through or under it. Persons so claiming are in privity with the Smith & Brainerd Company. But this deed does not operate to renew or extend the estoppel contained in the former one, but gives rise to a new estoppel available to different persons. This plaintiff is a stranger to the deed given by the Smith & Brainerd Marble Company, and therefore the estoppel therein or arising therefrom is not available to him. The privity involved therein looks forward and not backward. If we keep in mind the fact that estoppels are mutual, the correctness of this view is made obvious by a simple illustration: Suppose the deed from the Smith & Brainerd Marble Company had contained a recital that it or a third person owned the land in question, would the plaintiff be estopped from disputing this assertion? Certainly not. Why? Because he had no relation to that deed, was a stranger to it; and one who is not estopped by a deed can have no benefit therefrom by way of estoppel.

[4-7]    While the recitals in the deeds subsequent to his own cannot be availed of by the plaintiff as estoppels, they are solemn admissions and are to be given effect as such. *Alsup* v. *Stewart,* 194 Ill. 595, 62 N. E. 795, 88 A. S. R. 169. An estoppel is something more than an admission, and in effect gives rise to substantive rights, while an admission is evidence, merely. *Pond* v. *Pond's Estate,* 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212. Ordinarily, the effect of an admission on the question involved is for the determination of the trier of facts. *Hall* v. *Dewey,* 10 Vt. 593. But, undisputed and unexplained, admissions may be of such a character as to be conclusive upon the party making

them and his privies.   So the question of intent (which is always involved in the question of adverse possession, *Lathrop* v. *Levarn,* 83 Vt. 1, 74 Atl. 331) is frequently so decisively shown by acts or declarations as to preclude inquiry on the subject.   *Mayo* v. *Claflin,* 93 Vt. 76, 106 Atl. 653.   That the declarations and admissions of a party in possession, limiting or qualifying its character or extent, are admissible against his grantees is well established.   *Beecher* v. *Parmele,* 9 Vt. 352, 31 A. D. 633; *Day* v. *Wilder,* 47 Vt. 583; *Hale* v. *Rich,* 48 Vt. 217.   That their effect upon the grantee is just what it would be upon the maker cannot be doubted.

[8]   One of the essentials of a title by adverse possession is that the possession has been hostile.   It must have been hostile, not only in the beginning, but all the way along through the statutory period.   *Paton* v. *Robinson,* 81 Conn. 547, 71 Atl. 730; *Lewis* v. *New York & H. R. R. Co.,* 162 N. Y. 202, 56 N. E. 540; *Smith* v. *Stevens,* 82 Ill. 554.   It may be continuous and exclusive for the entire period, but if it ceases for any length of time, no matter how short, to be hostile, the statute ceases to run. 3 Thomp. Real Prop., § 2532; Sed. & Waite, § 744; *Houston Oil Co.* v. *Pullen* (Tex. Com. App.), 272 S. W. 439; *Tomlinson* v. *Lynch,* 32 Mo. 160.

Anything that interrupts this hostility breaks the continuity of the adverse possession, and a new disseizin is required.   Continuity is of the very essence of the doctrine, and it makes no difference how it is broken, so only it is broken.   *San Francisco* v. *Fuld,* 37 Cal. 349, 99 A. D. 278.

[9]   Nothing can more effectively interrupt the running of the statute than an express acknowledgment of the true owner's title.     *Dill* v. *Westbrook,* 226 Pa. 217, 75 Atl. 252; *Olson* v. *Burk,* 94 Minn. 456, 103 N. W. 335.   This proposition is too well established to admit of rational doubt.   *Ingersoll* v. *Lewis,* 11 Pa. 212, 51 A. D. 536; *Paton* v. *Robinson,* 81 Conn. 547, 71 Atl. 730; *Lewis* v. *Watson,* 98 Ala. 479, 13 So. 570, 22 L. R. A. 297, 39 A. S. R. 82; *Lamb* v. *Foss,* 21 Me. 240; *Howard* v. *Twibell,* 179 Ind. 67, 100 N. E. 372, Ann. Cas. 1915C, 93; *Risher* v. *Madsen,* 94 Neb. 72, 142 N. W. 700; *Horton* v. *Davidson,* 135 Pa. 186, 19 Atl. 934; *Hindley* v. *Metropolitan El. R. R. Co.,* 42 Misc. Rep. 56, 85 N. Y. S. 561.   "It is well known," says Cowan, J., in *Colvin* v. *Barnet,* 17 Wend. (N. Y.) 564, "that a single lisp of acknowledgment by the defendant, that he claims no title,

fastens a character upon his possession which makes it unavailable for ages''                                            .

Such an acknowledgment operates as an interruption of the running of the statute, and is binding upon the grantees of the person making it. *Howard* v. *Twibell, supra; Kirby* v. *Kirby,* 236 Ill. 255, 86 N. E. 259. The law of this subject is well shown by the following extract from the opinion in *Olwine* v. *Holman,* 23 Pa. St. 279: ''The defendant below claims under Anthony W. Olwine, as well as under James Bones, and is therefore bound by all that is contained in the deed between these parties of the 14th April, 1831. This deed is, in judgment of law, a recognition of the title derived from James Bones, prior to the conveyance to A. W. Olwine, and, if executed by the parties, is conclusive upon the question of adverse possession against Olwine, the grantee, and all persons claiming under him by title subsequently derived. Whatever may be the state of the possession before the execution of that deed, it ceased to be adverse to the legal owner at that time.''

[10] This is so, because one who requires a prior possession to tack to his own in order to make out the full fifteen years, takes that possession with such infirmaties as attach to it. *Day* v. *Wilder, supra.*

[11] Once the running of the statute is interrupted, the possession of the true owner intervenes, the previous hostile possession goes for naught, and the claimant must begin *de novo.* *Chicago & Alton R. R. Co.* v. *Keegan,* 185 Ill. 70, 56 N. E. 1088; *Adams* v. *Burke,* Fed. Cas. No. 49; *City of Cleveland* v. *Cleveland, etc., R. R. Co.* (C. C.), 93 Fed. 113; *Olwine* v. *Holman, supra.*                                          .

[12] As already indicated, in order to have this effect, the recognition of the owner's title must occur during the running of the statute, and not after it has run; for, a title by adverse possession, once it is acquired, is as full and complete as any other title, and no verbal transfer or declaration can divest one of it. *Hodges* v. *Eddy,* 41 Vt. 485, 98 A. D. 612; *Weed* v. *Keenan,* 60 Vt. 74, 13 Atl. 804, 6 A. S. R. 93; *Dee* v. *King,* 73 Vt. 375, 50 Atl. 1109. In such a case the recognition is only evidence tending to show the character of the previous possession.

The rule under discussion is not unfamiliar to this Court. Thus in *Mitchell* v. *Walker,* 2 Aik. 266, 16 A. D. 710, it was held that, if a party prescribing for a right, had, within the fifteen

years, acknowledged the title of the owner, the presumption of a grant was rebutted.   In *Albee* v. *Huntley*, 56 Vt. 454, the orator claimed a prescriptive right to the use of the water of a certain stream; but it was held that he had acquired no title by adverse possession since he had recognized the superior right of the grist mill owner.   See, also, *Lyman's Admr.* v. *Little*, 15 Vt. 576, and *Wilder* v. *Wheeldon*, 56 Vt. 344.   In *Weed* v. *Keenan*, 60 Vt. 74, 13 Atl. 804, 6 A. S. R. 93, the defendant claimed a prescriptive right to flow the plaintiff's land.   The rule was recognized in its entirety, and it was, in effect, held that any recognition of the plaintiff's title made after the defendant's prescriptive right had been acquired would not devest it; but such a recognition made during the fifteen-year period would interrupt the acquisition of the right.   The court said there could be no doubt of this last proposition and cited *Mitchell* v. *Walker, supra,* and *Wilder* v. *Wheeldon, supra,* adding, ''Authorities might be multiplied on this point, but there is no need of further citations.''

These cases of prescriptive rights are in point here, for, though prescription and adverse possession differ somewhat, technically, they are quite analogous and the rules of law applicable to them are in harmony.   *Barber* v. *Bailey*, 86 Vt. 219, 84 Atl. 608; 44 L. R. A. (N. S.) 98.

[13]    This recognition of another's title may be by acts as well as words.   So when one who was wrongfully flowing another's land yields to the latter's demands by drawing down the water and offering to buy the right, his adverse use is interrupted, and his claim of prescriptive right fails.   *Willey* v. *Hunter*, 57 Vt. 479.

[14]    It is not necessary that the acknowledgment be made to the owner, himself.   It is as effective if it is made to a third person.   3 Thomp. Real Prop., § 2532.

That the burden of proof on this issue was on the defendant is admitted, and it points to the findings as evidencing a fulfillment of the requirements imposed upon it.   The referee finds that the defendant and its predecessors in title, for more than fifteen years, have been in the possession and occupancy of the land in question, and that such possession and occupancy have been ''open, notorious, exclusive, continuous and hostile.''

[15]    Adverse possession is frequently said to be a question of fact.   See *Stevens* v. *Dewing*, 2 Aik. 112.   A more accurate statement would be that it is usually a mixed question of law and

fact. Whether the essential facts exist is for the jury; whether the facts found constitute adverse possession is for the court. Wells, Law and Fact, § 174; *Horton* v. *Smith-Richardson Inv. Co.,* 81 Fla. 255, 87 So. 905. Occupation is a fact. Its effect, when its nature and extent are shown, is a matter of law for the court. *Child* v. *Kingsbury,* 46 Vt. 47; *Davenport* v. *Newton,* 71 Vt. 11, 42 Atl. 1087.

[16]   The findings of a referee are made conclusive by statute. G. L. 2078. But findings that are mere legal conclusions are without force. *Trask* v. *Carrick,* 94 Vt. 70, 108 Atl. 846.

[17, 18]   Whenever a report shows an outstanding fact so vital as to make its legal consequences inevitable, it is for the court to give it effect without regard to other findings. *Yelverton* v. *Steele,* 40 Mich. 538. Then, too, when a referee fully reports the facts and draws therefrom an unwarranted inference, this Court will disregard the inference and render such a judgment as the facts require. We think it must be taken that the report contains all the subordinate facts on which the referee's ultimate conclusion was predicated. Our attention is specially called to the use of the words ''upon all the evidence submitted, I find * * * *.'' But it is doubtful whether these words apply to the last sentence of that paragraph of the report. However this may be, when the report was recommitted to him to specify any other facts on which his ultimate conclusion was based, he reported that ''this request is fully covered in the original report.''. This, taken in connection with the ''request'' to which it refers, must mean that ''all acts'' on which the ultimate finding of the character of the possession, hereinbefore referred to, are included in the original report. But if we. are wrong in thus construing the record, the result is not affected.

[19]   The unmistakable recognition of the plaintiff's ownership of the land in question by the defendant's grantors, being made before the statute had run, is conclusive evidence that no adverse title had become established, and precludes the defendant from deriving any benefit from the prior possession in aid of its own. It was always the land deeded by the plaintiff to the Smith & Brainerd Marble Company that was conveyed; this was the Burditt Farm, only. Each succeeding deed was a reiteration of the fact that the plaintiff still owned the land that bounded this farm on the north. This (to adopt the language of the

plaintiff's brief) ''tolled the statute, and made a new entry necessary.''

The last of these recognitions being within the fifteen-year period, a rehearing on the facts could not avail the defendant.

*Judgment reversed and judgment for the plaintiff to recover the seizin and possession of the premises in question and his costs.*

JUSTICE TAYLOR concurred in this opinion, but deceased before same was handed down.